REED ET AL. *v.* BROWN ET AL.

[No. 19,119. Filed August 13, 1958. Rehearing denied
September 24, 1958. Transfer denied
November 21, 1958.]

*Gray & Waddle* and *Carl M. Gray,* of Petersburg, for appellants.

*S. Hugh Dillin* and *Dillin & Dillin,* of counsel, of Petersburg, for appellees.

KELLEY, J.—In an action by appellees for compensatory benefits as dependents of Harshall A. Brown, deceased, the Industrial Board found that said decedent was in the employ of appellants on September 29, 1950 and that he died as the proximate result of personal injuries received by him on said date by reason of an accident arising out of and in the course of his em-

ployment with appellants. An award favorable to appellees was entered on the finding.

The whole controversy develops upon appellants' contention that decedent's fatal accident did not arise out of or in the course of his employment. The parties entered into a stipulation of agreed facts, and no evidence, additional thereto, other than a plat showing locations of the highways, the railroad, and appellants' sheds, which was made a part of the stipulation, was offered by either side.

Insofar as pertinent to the present inquiry, the stipulation establishes the following facts, in substance:

Appellants, on the aforesaid date, conducted as partners, the business of growing, packing and marketing apples and other fruit under the name of Reed Orchards. Said orchards are located approximately one mile east of Vincennes, Indiana, and are divided, the north part from the south part, by the east-west U. S. Highway No. 50 and the tracks of the Baltimore and Ohio Railroad which run generally east and west parallel with and immediately adjacent to said highway along the north side thereof. Appellants "owned the real estate upon which said railroad tracks are situated, and the real estate on both sides of said tracks, but subject to the operating easement" of said railroad company. Appellants had no control over the manner in which said railroad company operated its trains over said easement and had no control over the real estate "described in said easement." (No description of the easement is given in the stipulation.)

The packing shed and apple shed of appellants are located on the area of appellants' land which lies north of said railroad tracks and Highway 50. Along the north side of said area of land, a highway, known as the Old Wheatland Road, extends generally east and

west in an irregular fashion, and the west end of the road turns south, at a point a mile or so west of appellants' land, and crosses said railroad tracks into said Highway 50. Electric flasher signals are installed at said crossing, indicating the approach of trains thereto.

Access to said packing and apple sheds from said Old Wheatland Road on the north and from said U. S. Highway No. 50 on the south is provided by a private driveway of appellants extending north and south and connecting said highways. Entrance to the private driveway from either highway is at the point of its intersection with the highway. Immediately north of its intersection with said Highway 50, said private driveway is crossed by the main tracks of said railroad, so that in proceeding north on said private driveway from said Highway 50 to said sheds, it is necessary to go over and across said tracks. The decedent "had the right, in the course of his employment to elect and select whichever route he cared to travel to and from his work."

Employees of appellants' orchards worked nine hours a day, six days a week. Working hours were from 7:00 A.M. to 12 Noon, and from 1:00 P.M. to 5:00 P.M. Employees were not paid for the lunch period from 12:00 Noon to 1:00 P.M., and "could eat lunch either on or off the premises, at their own pleasure." (There is no stipulation that appellants provided or made food available or furnished facilities therefor.) "Said employees did not do or perform any work or labor for and on behalf of defendants (appellants) in the course and scope of their employment during lunch hour, but were wholly on their own to do whatever they elected to do during such period."

On said September 29, 1950, decedent worked for appellants as a Checker, his duties being to check the bushels or baskets picked by each picker, tag the basket of picked apples, and punch the tag so as to indicate the picker thereof. On said date, decedent parked his car at said packing shed and proceeded from there to check the pickers during the forenoon. "At 12:00 o'clock noon he elected to return to his home in Vincennes, Indiana, for his lunch, and did so."

Decedent was to have reported back to said packing shed at 1:00 P.M., for his afternoon's work. He left his home at approximately 12:45 P.M., on said date, driving an automobile, and proceeded east to the city limits of Vincennes and from thence east on said U. S. Highway 50 to its intersection with said driveway of appellants, turned off said highway onto said driveway and approached the point where the driveway is crossed by said railroad tracks.

At said time and place a passenger train of said railroad company was approaching said crossing from the east. Decedent operated his automobile onto said tracks in front of said train, and was then and there struck thereby, sustaining injuries which instantly caused his death. (The exact or approximate time of said accident is not stipulated. It appears, however, that it occurred after 12:45 P.M., and before 1:00 o'clock P.M.)

At the time of said fatal accident, decedent was enroute to report back to said packing shed for his afternoon work. From the time decedent left the orchards at 12:00 o'clock noon, on said day, until the time of the accident, he was not doing or performing any work, labor or services for appellants. His employment was to have been resumed when he reported back to the packing shed for duty at 1:00 P.M.

Appellants' most vigorous argument seems to be, in effect, that decedent was not compelled by them to use or travel the route he selected in order to reach the premises where his work was to be performed; that he could have safely crossed the tracks at the crossing where the flasher signals were installed and proceeded to the private driveway and working premises by way of the Old Wheatland Road. That, therefore, decedent created the hazard and it was not incidental to his employment. Further, that there is no evidence that the route decedent elected to follow in returning to his employment was the "ordinary" route used by decedent and other employees as ingress and egress to the packing shed or orchard.

The real gist of and point for observance in appellants' contention is not that decedent created his own hazard by making the wrong selection of routes to the place of employment but that as decedent was not required to use or follow the particular route taken by him, there being afforded another and allegedly safer route, he was not, therefore, under the circumstances disclosed by the stipulation, "on the premises" of appellants at the time of suffering his fatal injuries. Accepting such interpretation of the basic proposal made by appellants, the general question, originally stated, seems resolved into a more precise and specific ground of inquiry. In point of time, was decedent, when the accident occurred, sufficiently close in distance to the locale of his employment and within such a reasonable period of time before the designated hour of his work commencement as to bring the accident within "the course of (his) employment"? And, under the stipulated facts, was the hazard encountered by decedent while on appellants' private driveway deprived of reasonable incidentalism to his employment so that

the accident and consequent injuries to decedent did not arise "out of" his employment, either because of appellants' lack of control over the real estate described in the railroad easement or because decedent was not required by appellants or the conditions of his employment, to use such driveway over the railroad tracks as a way of ingress and egress to and from the place of his employment?

"One of the most difficult problems met with in the enforcement of the Workmen's Compensation Act is the determination of the question whether an injury arose out of and in the course of the employment. The employment is not limited to the exact moment when the workman reaches the place where he is to begin his work, or to the moment when he ceases that work. It necessarily includes a reasonable amount of time and space before and after ceasing actual employment, having in mind all the circumstances connected with the accident. Whether an employe in going to or returning from the place of his employment is in the line of his employment is governed and controlled by *the particular circumstances and facts of each case.* There must, however, be a line beyond which the liability of the employer cannot continue. *Where that line is to be drawn is usually a question of fact. . . .*" (Our italics.) *Indian Creek Coal and Mining Company* v. *Wehr et al.* (1920), 74 Ind. App. 141, 151 (On Rehearing), 127 N. E. 202, 128 N. E. 765; *Jeffries et al.* v. *Pitman-Moore Company et al.* (1925), 83 Ind. App. 159, 161, 147 N. E. 919; Small, Workmen's Compensation Law, §7.7, p. 170; Horovitz, Modern Trends in Workmen's Compensation, 21 I. L. J., pp. 551, 552, 553.

The latter author, in his said treatise, on page 551, *et seq.* of 21 I. L. J., says:

"Injuries going to or from work have caused many judicial upheavals. . . . 'In the course of' deals mainly with the element of *time and space,* or 'time, place and circumstances.'

"Thus, if the injury occurred fifteen *minutes* before or after working hours and within one hundred *feet* of the employer's premises, on sidewalks or public roads, the question of 'in the course of' the employment is flatly raised. . . .

"There is no reason in principle why states should not protect employees for a *reasonable period of time prior to or after working hours* and for a *reasonable distance* before reaching or after leaving the employer's premises. . . ."

The stipulated facts in this action show that the deceased was to have reported back to the packing shed for the afternoon work at 1 o'clock P.M. He left his home at 12:45 P.M., and proceeded from there by automobile to appellants' private driveway, which was approximately one mile from the city limits of Vincennes. The distance from his home to the said city limits is not disclosed. The plat, filed with the stipulated facts, and made a part thereof, indicates an approximate distance of 49 feet from the north line of Highway 50 to the railroad tracks and a distance of about 40 feet from the tracks to the southern line of the orchard north of the railroad, totalling an approximate distance of 89 feet from the north line of said highway to the south line of said orchard. The time of the accident is not revealed by the stipulation. From these stipulations, the Board could have reasonably inferred that the fatal accident occurred within a period of time considerably less than fifteen minutes prior to the time decedent was to report for work. As respects the time and space requirements of the stated rule, we think that under the

circumstances as stipulated by the parties, the Board was justified in concluding that the decedent, at the moment of his fatal accident, was within such a reasonable period of time and distance from the place of reporting for his afternoon work as to bring him within the course of his employment. See *Cudahy Packing Company of Nebraska* v. *Parramore et al.* (1923), 263 U. S. 418, 426, 44 S. Ct. 153; *Murphy* v. *Miettinen* (1945), 317 Mass. 633, 59 N. E. 2d 252 (employee injured one-half hour before work began). In the above-cited Cudahy case, the court said:

> "We attach no importance to the fact that the accident happened a few minutes (seven minutes) before the time Parramore was to begin work, and was, therefore, to that extent, outside the specified hours of employment. The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable interval of time for that purpose." (The brackets and words inserted therein are ours.)

It has been stated that in attempting to define in part what constitutes a reasonable time and space for ingress to and egress from the place of employment, the courts have seemed to set the boundary roughly at the employer's premises. See, Small, Workmen's Compensation, §7.7, p. 171. He further says that the term, employer's premises, has been construed to mean any premises which the parties contemplate shall be used for ingress and egress, regardless of ownership. And Horovitz, in the above-cited treatise on Trends in Workmen's Compensation, 21 I. L. J., 473, on page 552, declares: "The overwhelming weight of authority permits a very broad definition of 'premises', not only to include premises owned by the employer, but also premises leased, hired, *supplied*

*or used by him,* even private alleyways merely used by the employer." (Our italics.)

As shown, it appears from the stipulation of the parties that the appellants owned the real estate upon which the railroad tracks were situated and the land on both sides of said tracks. The orchards operated by appellants were located on the real estate and said tracks and Highway 50 run through said real estate, dividing said orchards. It is stated that the land was subject to the "operating easement" of the railroad company and that appellants had no control over "the real estate described in said easement." The easement and the real estate described therein are not shown or defined. The plat indicates a strip of land 40 feet wide north of the tracks and a strip 49 feet wide south of the tracks, and this could be the "easement" referred to but, if so, there is no evidence or stipulation establishing such fact.

In any event, it appears immaterial. The plat shows that appellants' private driveway extends north and south across the tracks and across the strip of land on both sides thereof. And it is stipulated that "access to said packing shed may be had from either highway by traveling over either highway to its intersection with defendants' driveway and *thence over said driveway to the vicinity of the shed.* That the said Harshall A. Brown *had the right, in the course of his employment, to elect and select whichever route he cared to travel to and from his work.*" (Our italics.) It seems clear from said stipulation that the appellants contemplated that the decedent, at his own election, should have the right to use and travel upon said private driveway in going to and from his work. In fact, it seems not amiss to say that decedent was, in effect, invited by appellants to avail himself of such route. From

the plat it appears that said Highway 50 runs more or less on a straight line in a slightly southeasterly direction from Vincennes to and past appellants' orchards, while the Old Wheatland Road is irregular, jaunts considerably to the north, and then drops gradually down to and along the north side of the north orchard of appellants. While not stipulated, the inference is irresistible that passage from Vincennes to appellants' orchards by way of said Highway 50 and over said private driveway across the tracks afforded a much quicker, shorter and more convenient route to and from the place of employment.

Notwithstanding appellants had no "control" over the real estate "described in said easement," the fact is evident that appellants' driveway extended across the tracks and the land on each side thereof and that decedent was authorized and permitted, at his election, to travel thereon to and from his work. The fact, together with the stipulated fact that appellants owned the real estate transversed by the railroad tracks and the land on both sides thereof, renders it clear, we think, that when decedent turned his automobile off said Highway 50 and onto said driveway and had proceeded thereon at least 49 feet toward the place he was to report for work at which point he was struck by the train, he was then on the "premises" of the appellants. See *McMillin* v. *Calco Chemical Co., Inc.* (1936), 15 N. J. Misc. 68, point 1, 188 A. 694. Further, at the place of the collision, decedent, as appears from the plat, was within 40 feet of the south line of the north orchard, and this close proximity to his ultimate place of employment, under the circumstances delineated by the stipulation, was sufficient, we think, to warrant the Board to conclude that decedent was then within such a reasonable

distance from his actual place of employment as to be considered "on the premises" of his employers.

The statement of Justice Sutherland in *Bountiful Brick Company* v. *Giles* (1928), 276 U. S. 154, 48 S. Ct. 221, seems so apropos to the instant point of consideration that we quote at length from it:

"And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work *by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises,* the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises when the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer. (Citing cases). . . .

"There, (referring to the Parramore case, 263 U. S. 418, cited by us *supra*), as here, it was necessary for the employees, in order to get to the place of work, to cross the tracks, and they were in effect invited by the employer to do so. The difference between the two cases is that in the former (the Parramore case) the crossing customarily used was entirely upon a public road, while here the way followed was in part along the railway tracks and *by crossings within the*

*railroad right of way wherever the employees upon
their own volition might choose to go.*

". . . No definite line of travel being indicated
by the company or followed by the employees, who,
with the company's full knowledge and acquies-
cence, habitually crossed wherever they saw fit, it
results that, however the crossing was made, the
risk thereby incurred was reasonably incidental
to the employment and became annexed as an
implied term thereof. . . ." (The italics, brackets,
and words enclosed therein, are ours.)

There can be no question here but that the decedent
at the time of the fatal accident had the intention of
serving his employers, the appellants. It is stipulated
that "at the time of said fatal accident *the said Har-
shall A. Brown was enroute to reporting back to said
packing shed and orchard for his afternoon's work.*
He was to have reported back at 1:00 P.M., but his
death occurred prior to the time he was to have re-
ported, *which prevented his reporting back and resum-
ing his duties* at 1:00 P.M., on said date." (Emphasis
supplied.)

The decedent possessed the right, according to the
stipulation, to travel to his work upon the private
driveway supplied by appellants across the railroad
tracks and over their land. It is apparent, therefore,
that appellants not only acquiesced in decedent's use
of said way over their land but that they intended that
decedent was to avail himself thereof, at his own
choosing. Under such circumstances, it does not lie
in the mouth of appellants to now say that there was
another way which decedent could have used and,
since he did not do so, he brought about his own hazard,
and the dire results of his mischoosing must be attrib-
uted to him and not to appellants. There is no stipu-
lation or evidence that appellants had ever notified

or warned decedent that he should not use this particular route nor that they suggested to him that he should use the other route.

We do not wish to be understood as holding that under any and all circumstances the existence and availability of an alternative route to the one on which the accident occurred is not a factor to be considered in determining whether an accident arose out of and in the course of the employment. Each case must be determined upon the particular facts thereof. For interesting material see the annotation in 50 A. L. R. 2d 363, §13, on pages 412, 413 and 414. Our present holding is predicated solely upon the facts and circumstances made apparent by the record before us.

In this case, the decedent, at the time of the accident, was going to his work, a duty he owed his employers, the appellants, and was proceeding over their private driveway, as he was authorized to do by said employers. He was within 40 feet of the south line of the orchard which was the actual situs of his employment. And he was there, as we have shown, with the intention of serving his employers. Thus, it is apparent that in the prosecution of his intention to report for his work on time he was at a place where his employers had authorized him to be. While, as appellants urge, he was not required to be at that place, yet neither does it appear that he was required to be at any other place. It seems logical to hold, under such circumstances, that since appellants gave decedent the right to elect which route he cared to travel, his election to follow the route he took would have the same legal effect and consequences as if he had been "required" by appellants to take that route and consequently be at the particular place where the accident occurred. It may

be noted at this point that if decedent had proceeded to his work by way of the Old Wheatland Road and had been struck by a train at the crossing where the flasher signals were located, appellants might then have argued that decedent was not "required" to be at the place where he was struck. For reference to a somewhat similar contention, see *Patton Park, Inc.* v. *Anderson* (1944), 222 Ind. 448, page 458, 54 N. E. 2d 277.

Being rightfully upon appellants' private driveway which crossed the tracks of the railroad situated upon appellants' land, at the time and place and under the circumstances and conditions here exhibited, it seems clear that decedent was subjected to the risk of a hazard which was incidental to his employment. Nothing is said in the stipulation indicating that appellants' driveway was used by the general public nor that it was not so used. Inasmuch as the driveway is designated in the stipulation as the "private" driveway of appellants, it seems fair to infer therefrom that the driveway was devoted to the business and personal purposes of the appellants and therefore was not generally used by the traveling public. Thus considered, it seems to follow that the hazard and danger of accident encountered by decedent was not one common to all but was one incidental to his employment. We think the Board correctly concluded the fatal accident which befell the decedent arose out of and in the course of his employment.

We find no merit in appellants' contention that as decedent was not paid for the hour of lunch and was "on his own" during that time to do as he pleased, the accident was not sustained by him in the course of his employment. What has been already said would seem to answer this contention.

The facts in this case are such that it is not to be treated solely by the usual principles applicable to "lunch hour" cases. It is subject also to the principles having application where the employee is going to or coming from work.

Appellants rely heavily upon the cases of *Mitchell* v. *Ball Bros. Co.* (1933), 97 Ind. App. 642, 186 N. E. 900, and *Moore* v. *Sefton Manufacturing Corporation* (1924), 82 Ind. App. 89, 144 N. E. 476, but we find nothing therein, either in the facts or the law therein announced, contrary to what we here hold. In the Ball Bros. Co. case, the employee left the employer's premises for his lunch and went to a restaurant across the street, a public highway, from the employer's plant. On his way back to work he was struck by an automobile while crossing said public highway and before he reached the employer's premises. The court held with the Board that the decedent was injured "while off of his employer's premises" and that there was no "incidental connection between the conditions under which decedent worked, and his resulting injury, and therefore . . . no 'causal connection' between the employee's employment and the act resulting in his injury."

Likewise, in the said Moore case, the employee left the employer's premises and went to a restaurant about 450 feet from the entrance to the employer's premises for his lunch. Just south of the employer's factory building, there was a vacant lot owned by the latter. There was a concrete sidewalk on the side of the street next to said vacant lot and there was a driveway about 10 or 12 feet wide extending across the sidewalk apparently constructed by the public authorities. The employee in crossing over the driveway fell and was injured, and made claim on the

ground that at the time of the injury he was on the premises of the employer, namely, on a private driveway of the employer, used as a means of ingress and egress to and from its place of business. The court held that the fact that the public authorities had so constructed the sidewalk as to make it convenient to reach the employer's property with automobiles and other vehicles did not convert that part of the street into a private driveway which the employee was required to use in the performance of his duty to his employer.

The facts in each of said cases are wholly dissimilar to those in the instant case. In considering them, it must be kept in mind that "Whether an employee in going to or returning from the place of his employment is in the line of his employment is governed and controlled by the particular circumstances and facts of each case." *Indian Creek Coal and Mining Co.* v. *Wehr, supra.* It is of interest to note that the same judge who gave forth the last quoted principle also wrote the opinion in the *Moore* v. *Sefton* case, *supra,* upon which appellants rely.

The award appealed from is affirmed.

Pfaff, C. J., of the Second Division, dissents. This cause, therefore, was referred to the full court for determination.

### DISSENTING OPINION.

PFAFF, C. J.—The question involved in this case is whether the injury arose "out of and in the course of the employment."

The employment of decedent ceased at noon when he left the premises of the appellants and returned to his home for lunch. His employment was to have

been resumed when he reported back to the packing shed at 1:00 P.M. The fatal accident intervened. The decedent was on his own. He elected to return home for his lunch rather than eat lunch on the premises. He had the right to elect which route he would pursue in returning to his employment. He was not required to travel over the route he elected. In this connection it should be borne in mind that there is nothing contained in the stipulation of facts and, therefore, there is no evidence that the route which the decedent elected to follow in returning to his employment was the ordinary route used by the decedent and other employees as ingress and egress to the packing shed or the orchard. It is true that this route was available if employees elected to use it, but they were not compelled by the appellants to use this route. *Mitchell* v. *Ball Bros. Co.* (1933), 97 Ind. App. 642, 186 N. E. 900; *Moore* v. *Sefton Mfg. Corp.* (1924), 82 Ind. App. 89, 144 N. E. 476.

One of the questions involved in this case is whether or not the decedent was on the premises of the appellant at the time of the fatal accident. Under the stipulation of facts the Baltimore and Ohio Railroad Company had an easement through the real estate owned by the appellant, and "defendants at no time had any control over the manner in which the railroad company operated its trains over said easement and right of way and had no control whatsoever over the real estate described in said easement."

When the term "on the premises" is used in this class of cases, it means on the premises where the employee is employed or where the employee is compelled by the employer to be for the purpose of ingress and egress to the premises. In this instance the appellants did not compel the employee to be at the place

where the fatal accident occurred in order to reach the place of his employment.

Appellee's decedent by his own election created the hazard which resulted in his fatal injuries. Had he crossed the railroad tracks at a point where the crossing was protected by flasher lights, the accident would not have occurred but he elected to cross at the unprotected crossing. This hazard which he created himself was not a hazard created by his employer but was self-created.

The accident appellee sustained was not incidental to his employment and, therefore, a case has not been made entitling the appellee to recover and that the award of the Full Industrial Board should be reversed.

NOTE.—Reported in 152 N. E. 2d 257.

Transfer denied in which Bobbitt, C. J., dissents.