SIDNEY GOLDSTONE AND ARTHUR GOLDSTONE *v.*
DOROTHY KOZMA.

[No. 171A1. Filed October 27, 1971. Rehearing denied December 3, 1971. Transfer denied April 5, 1972.]

*Samuel J. Furlin, Spangler, Jennings, Spangler & Dougherty,* of Gary, for appellants.

*Michael F. Yudt,* of Gary, for appellee.

SHARP, J.—The decision of the Industrial Board of Indiana awarded Appellee, Dorothy Kozma, benefits under our Work-

men's Compensation Act, and the Appellant-Employers, Drs. Sidney Goldstone and Arthur Goldstone, appealed.

In this case, we are again called upon to define and apply the terms "arising out of and in the course of employment" as found in the Indiana Workmen's Compensation Act. See Ind. Ann. Stat. § 40-1202.

The plaintiff-appellee, Dorothy Kozma, was a medical secretary working for Dr. Sidney Goldstone at the Gary Professional Building also known as the Goldstone Clinic in Gary, Indiana. Drs. Sidney and Arthur Goldstone operated a medical practice in Suite One of said building. The Gary Professional Building was a one-story structure containing eight or nine suites. Adjacent to the building was a parking lot regularly used by the occupants, employees and customers-patients of the occupants of the building. The north door of the building led to an adjacent parking lot. There were three other doors of the building which could be used as entry-exits.

Around noon on December 27, 1965, the plaintiff-appellee walked out of the north door of this building and to the car of a fellow employee which was situated in the parking lot adjacent to this building. The car in question was about forty feet from the receptionist area where the appellee regularly worked in Suite One of the building. The automobile in question was parked in the area regularly used for parking by the occupants of this building. The parking lot was icy on this date, and the appellee slipped and fell as she was getting into her friend's automobile to go to lunch. As a result of such fall, she sustained injury to her back.

In testifying as to the ownership of the building, the appellant, Dr. Sidney Goldstone, stated in answer to direct questions by his attorney:

"Q. Now who owned the particular building where the office was located on December 27, 1965?
"A. Well, it's a complicated procedure. I think the actual ownership of the building was Robert Goldstone and

Michael Goldstone. I think they were leasing the building to the Goldstone Realty Corporation, which was Dr. Joseph Goldstone and Dr. Adolph Goldstone. I think that's the way it was, it's confusing.

"Q. You, in no way, owned the particular building where your office was located on December 27, 1965?

"A. I think not."

In regard to the use of the adjacent parking lot, Dr. Sidney Goldstone testified on direct examination as follows:

"Q. There are other people that had offices and suites in that particular building, isn't that true?

"A. Yes.

"Q. Now, as far as you were concerned, anybody could use that particular parking lot, isn't that true?

"A. Yes.

"Q. Now, did you ever instruct the plaintiff to use that particular parking lot?

"A. I don't ever remember whether we instructed her. The parking lot was there for everyone to use.

"Q. My point is, you didn't instruct her or tell her to use that parking lot?

"A. Had no where else to park."

On cross-examination, Dr. Sidney Goldstone testified on the same subject as follows:

"Q. When you leased the office space that you have indicated, I believe they referred to that as Suite No. 1 in your lease, is that correct?

"A. Yes.

"Q. In order to get to your suite how do you get in and out of the building to your suite?

"A. How would I, ordinarily, get in and out of the building?

"Q. Yes.

"A. Through the parking lot.

"Q. Is this the parking lot Mrs. Kozma fell in?

"A. Yes.

"Q. Is this the parking lot you used whenever it was available?

"A. Yes.

"Q. Is this the same parking lot that Mrs. Kozma would use when she drove her car?

MR. FURLIN: I would object to what Mrs. Kozma would do.

"Q. (By Mr. Yudt) Do you know if Mrs. Kozma ever drove her car to work?

"A. Yes.

"Q. You know if she used this parking lot she referred to?

"A. Yes.

"Q. Did you ever tell her not to use the parking lot?

"A. No.

"Q. Did you tell her she was permitted to use it if there was space available?

"A. I don't ever remember telling her she could use it; it was assumed she could use it.

"Q. Are you familiar with the area where Mrs. Kozma had fallen down?

"A. Yes.

"Q. Would you say where she had fallen down would be a direct route from the reception area to the point of fall?

"A. Yes.

"Q. Would this be the normal way of getting in and out of the building from the parking lot where she fell to your office?

"A. Closest distance between two points is a straight line. She went directly from the office directly to where she fell.

"Q. I see. In order to get to your Suite No. 1 you have to use some hallway area within the building?

"A. Yes, there was one common hallway running the length of the building, north and south.

"Q. Under the lease you were entitled to use that to get in and out of your office?

"A. Yes.

"Q. This hallway area was also used by your employees or patients coming to see you?

"A. Yes."

There are at least three general propositions which must serve as touchstones in this case.

The first and most elemental is that this court will not weigh the evidence and will not substitute its judgment of the factual record for that of the Industrial Board. On appeal we must consider whether the finding of the Industrial Board rests upon a substantial factual foundation. We may reverse the award only if we find no substantial factual foundation to sustain the award of the Industrial Board. Our Supreme Court has heretofore held that we should reverse only if:

(1) It should appear that the evidence upon which the Industrial Board acted was devoid of probative value,

(2) The quantum of legitimate evidence was so proportionately meager as to show that the finding does not rest upon a rational basis, or

(3) That the result must have been substantially influenced by improper considerations.

See *Pollack* v. *Studebaker Corporation*, 230 Ind. 22, 105 N. E. 2d 503 (1951) and *Blue Ribbon Pie Kitchens, Inc.* v. *Long, et al.*, 230 Ind. 257, 103 N. E. 2d 205 (1952).

Secondly, in addition to the limitation that a compensable injury or death must arise out of the employment, there is the further directive that it must arise in the course of employment, at a place where the employee may reasonably be, while he is fullfilling the duties of his employment or is engaged in something incidental thereto. See *Tom Joyce 7 Up Company* v. *Layman,* 122 Ind. App. 369, 44 N. E. 2d 998 (1942).

The third touchstone relates to the interpretive attitude that we must take toward the Workmen's Compensation Act. It has long been held in Indiana that the Workmen's Compensation Act, being remedial in nature, should be liberally construed to accomplish the purpose

for which it was enacted and, accordingly, it should be liberally construed in favor of employees and beneficiaries. Recent decisions of the Supreme Court of Indiana have emphasized the demand for this construction. See *Prater* v. *Indiana Briquetting Corporation*, 144 Ind. App. 349, 251 N. E. 2d 810 (1969) and *Marshall* v. *Tribune Star Publishing Company*, 142 Ind. App. 556, 243 N. E. 2d 761 (1968). These same principles were recently reaffirmed by this court in *Burger Chef Systems, Inc.* v. *Wilson*, 147 Ind. App. 556, 262 N. E. 2d 600 (1970), and in *Indiana Toll Road Comm.* v. *Bartusch*, 135 Ind. App. 123, 184 N. E. 2d 34 (1963). It is also well recognized that the words "arising out of" and "in the course of the employment" as used in the Workmen's Compensation Act should be liberally construed to accomplish the humane purposes of the act. See *Hayes* v. *Perry*, 116 Ind. App. 590, 66 N. E. 2d 73 (1946), *The Studebaker Corporation* v. *Jones*, 104 Ind. App. 270, 10 N. E. 2d 747 (1937) and *In Re Ayers*, 66 Ind. App. 458, 118 N. E. 386 (1918).

In their brief and in oral argument, the appellants concern themselves primarily with the place of this accident i.e. the premises. In their brief, the appellants took the hard position that the premises of the appellee's employment was strictly limited to Suite One in this particular building. However, in oral argument the appellants conceded that the premises might include the entire building but would be strictly limited to the physical confines of this particular building and could not include anything outside this building.

Dean Ben Small in his *Workmen's Compensation Law of Indiana* (1950) has taken a much broader view of premises:

"In attempting to define in part what constitutes a reasonable time and space for ingress to and egress from the place of employment, the courts have seemed to set the boundary roughly at the employer's premises. Thus, compensation was allowed for the death of a workman caused by a collision with an interurban car while he was driving to work at the usual time over a roadway on the employer's premises maintained for the use of employees in going to

and from the factory building. Compensation was allowed in another case where a workman, on his way down a stairway, was hit by a lump of coal thrown by an angered fellow workman. It was allowed in another case where an engineer was killed by a coal mine train which he was attempting to board. The same was true where another workman was struck by a train in the yards of a steel company for which his employer was doing certain work. The premises in such case were held to be those used by the employer for performing the service, whether they were owned by him or not. Moreover, the term, employer's premises has been liberally construed to mean any premises which the parties contemplate shall be used for ingress and egress, regardless of ownership. . . ."

In regard to the entry and egress to and from work, Justice Sutherland, speaking for the Supreme Court of the United States almost fifty years ago, stated:

"We attach no importance to the fact that the accident happened a few minutes before the time Parramore was to begin work and was, therefore, to that extent, outside the specified hours of employment. The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable interval of time for that purpose." Cudahy Packing Company of Nebraska v. Parramore, et al., 263 U.S. 418, 426, 44 S. Ct. 153 (1923).

Five years later, the same Justice speaking for a unanimous Supreme Court of the United States in *Bountiful Brick Co.* v. *Giles,* 276 U.S. 154, 159, 48 S. Ct. 221 (1928), said:

"And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employ-

ment may begin in point of time before the work is entered upon, and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer." (citations omitted)

Both of the above opinions by the Supreme Court of the United States were quoted with approval in an extensive and well documented opinion of this Court speaking through Judge Kelly in *Reed* v. *Brown,* 129 Ind. App. 75, 152 N. E. 2d 257 (1958).

Because of the similarities of facts and reasoning, several sections of Judge Kelly's opinion are worthy of our quotation here:

"One of the most difficult problems met with in the enforcement of the Workmen's Compensation Act is the determination of the question whether an injury arose out ■ of and in the course of employment. The employment is not limited to the exact moment when the workman reaches the place where he is to begin his work, or to the moment when he ceases that work. It necessarily includes a reasonable amount of time and space before and after ceasing actual employment, having in mind all the circumstances connected with the accident. Whether an employee in going to or returning from the place of his employment is in the line of his employment is governed and controlled by *the particular circumstances and facts of each case.* There must, however, be a line beyond which the liability of the employer cannot continue. *Where that line is to be drawn is usually a question of fact* . . . Indiana Creek Coal and Mining Company v. Wehr et al. (1920), 74 Ind. App. 141, 151 (On Rehearing), 127 N. E. 202, 128 N. E. 765; Jeffries et al. v. Pitman-Moore Company et al. (1925), 83 Ind. App. 159, 161, 147 N. E. 919; Small, Workmen's Compensation Law, § 7.7, p. 170; Horovitz, Modern Trends in Workmen's Compensation, 21 I. L. J., pp. 551, 552, 553. (Our emphasis) 129 Ind. App. 82.

\* \* \* \* \*

"Further, at the place of the collision, decedent, as appears from the plat, was within 40 feet of the south line of the north orchard, and this close proximity to his ultimate place of employment, under the circumstances delineated by the stipulation, was sufficient, we think, to warrant the Board to conclude that decedent was then within such a reasonable distance from his actual place of employment as to be considered "on the premises" of his employers. 129 Ind. App. 86.

*    *    *    *    *

"Being rightfully upon appellants' private driveway which crossed the tracks of the railroad situated upon appellants' land, at the time and place and under the circumstances and conditions here exhibited, it seems clear that decedent was subjected to the risk of a hazard which was incidental to his employment. Nothing is said in the stipulation indicating that appellants' driveway was used by the general public nor that it was not so used. Inasmuch as the driveway is designated in the stipulation as the "private" driveway of appellants, it seems fair to infer therefrom that the driveway was devoted to the business and personal purposes of the appellants and therefore was not generally used by the traveling public. Thus considered, it seems to follow that the hazard and danger of accident encountered by decedent was not one common to all but was one incidental to his employment. We think the Board correctly concluded the fatal accident which befell the decedent arose out of and in the course of his employment.

"We find no merit in appellants' contention that as decedent was not paid for the hour of lunch and was "on his own" during that time to do as he pleased, the accident was not sustained by him in the course of his employment. What has been already said would seem to answer this contention. The facts in this case are such that it is not to be treated solely by the usual principles applicable to "lunch hour" cases. It is subject also to the principles having application where the employee is going to or coming from work." 129 Ind. App. 90.

This subject has also been considered in an extensive article also cited with approval in *Reed* v. *Brown, supra,* appearing at 21 Ind. L. J. at pages 549, 552:

"Attempts have been made to define "in the course of" the employment. An injury or an accident "befalls a man 'in the

course of' his employment, if it occurs while he is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time."

"In the course of" is sometimes referred to as "during" the employment or "while the employment was in progress." Its main element is, in practice, that of time and space, though place and circumstances are often said to be factors.

"How about injuries just before work starts, or shortly after quitting work?

"Certainly, if an employee worked from 9 to 12 and from 1 to 5, these hours were "in the course of," but how about the dinner hour, 12 to 1 P.M.?

"Most courts have been liberal in protecting the workers during the noon-hour. Thus an employee eating his lunch on the employer's premises is almost universally considered as "in the course of" the employment. Food or rest during that hour is considered essential to his well-being, without which he could not efficiently perform for his employer during the actual work hours. But proving that the injury occurred at lunch time is not per se enough. The injury must also arise "out of" the employment. Hence, what he was doing at the moment of injury, during the noon hour, is still an essential matter to be determined, before an award can be made. There must be a causal connection (out of) as well as a time connection (in the course of) with the employment."

\*  \*  \*  \*  \*

"The overwhelming weight of authority permits a very broad definition of "premises," not only to include premises owned by the employer, but also premises leased, hired, supplied or used by him, even private alleyways merely used by the employer. Adjacent private premises are protected by many states, and a few protect the employee even on adjacent public sidewalks and streets. . . ." (footnotes omitted)

There is no contention here that the Appellee was on a public sidewalk or public street as was the case in *Mitchell* v. *Ball Bros. Company,* 97 Ind. App. 642, 186 N. E. 900 (1933), and *Moore* v. *Sefton Manufacturing Corporation,* 82 Ind. App. 89, 144 N. E. 476 (1924).

Another decision which is similar to this one both on facts and reasoning is *U.S. Steel Corp.* v. *Brown,* 142 Ind. App. 18, 231 N. E. 2d 839 (1968) in which Judge Smith speaking for this court said:

> "The appellant maintains that under our present law an employee can be compensated for an injury only if the employment "increased the risk" of its occurrence. However, if we are to apply this test to the facts of this case, we must necessarily establish a comparative standard over which the risk may be increased. A more contemporary position is that the employment must have increased the risk of injury to the employee beyond that to which the general public is exposed. *American Freight Forwarding Corp.* v. *Industrial Comm'n* (1964), 31 Ill. 2d 293, 201 N. E. 2d 399; Slain, Workmen's Disability, p. 37 (1967)."

To some extent, the situation here represents a blend of those considerations which are found in the so called "premises," "lunch hour," and "ingress-egress" cases.

We cannot as a matter of law, considering all of the factual record in this case with the inferences most favorable to the appellee, determine that the Industrial Board drew the premises lines too broadly here. From all of the facts here and in light of the authorities cited, a liberal construction of the employers' premises in this case could well include the parking area used by appellants' employees for parking and as ingress and egress to and from the place of employment. The fact that the employer may not have owned the premises or that the proof of such ownership was absent is not fatal to the employee's claim. This point was made very clearly in the case of *Reed* v. *Brown, supra.* We are not persuaded to disturb the decision and award of the Industrial Board and find that the same should be and hereby is affirmed.

Hoffman, C. J. and Staton, J., concur.

White, J. concurs in result with statement.

## Concurring Statement

WHITE, J.—I repeat my conviction that cases of this kind should be remanded to the Industrial Board for a finding of facts. *Miller* v. *Barrett* (1971), 148 Ind. App. 685, 269 N. E. 2d 772, 778, 25 Ind. Dec. 547, 556, second opinion.

NOTE.—Reported in 274 N. E. 2d 304.