**BLAW–KNOX FOUNDRY & MILL MACHINERY, INC., Appellant (Defendant Below),**

v.

**Thelma DACUS, et al., Appellee (Plaintiff Below).**

No. 2–785A231.

Court of Appeals of Indiana, Second District.

March 18, 1987.
Rehearing Denied June 22, 1987.

James E. Schreiner, Hammond, for appellant.

John R. Pera, Merrillville, for appellee.

SHIELDS, Presiding Judge.

Blaw-Knox Foundry & Mill Machinery Inc. appeals the Industrial Board decision awarding Workmen's Compensation benefits to Thelma Dacus, the wife of employee Charles Ducas.

We affirm.

## DISCUSSION

At approximately 11:20 p.m. on August 28, 1979, Charles Dacus, an employee of Blaw-Knox, sustained fatal gunshot wounds inflicted by an unknown assailant in Blaw-Knox's employee parking lot while going to his car after completing his work shift at the foundry located at 4440 Railroad Avenue, East Chicago. The issue on appeal is whether Dacus's death arose out of and in the course of his employment.

An employee, or his dependents, must demonstrate the employee's accident arose "out of and in the course of the employment", Ind.Code Ann. § 22–3–2–2 (Burns Repl.1986) to be eligible for Workmen's Compensation in Indiana. The phrases "out of" the employment and "in the course of" the employment have separate meanings and both requirements must be fulfilled before compensation is awarded.

"'Out of' portends some probe into causation and the relationship of a particular accident and a particular harm to the employment sought to be charged.

The primary inquiry is directed toward the question of whether the accidental injury or death was the outgrowth of the employment, whether it was due to the employment, whether it was work-induced. Generally stated, the rule seems to be that an accident arises out of the employment when there is a causal connection between it and the performance of some service of the employment. A causal connection is established when the accident is shown to have arisen out of a risk which a reasonable person might comprehend as incidental to the employment, or where the evidence shows an incidental connection between conditions under which the employee worked and his resulting injury or death. The phrase, in the course of, requires, on the other hand, some investigation into the work itself and the breadth of its grasp. The principal emphasis is upon the time and place elements, so that 'in the course of' the employment might be taken to mean 'during' the employment." (footnotes omitted)

B. Small, *Workmen's Compensation Law in Indiana*, § 6.1 (1950).

An award of the Board based upon competent evidence will not be reversed on appeal. It is the duty of the Board to weigh the evidence and draw reasonable inferences from the facts. In order to reach a contrary conclusion we may not disregard any reasonable inference drawn by the Board from the facts the evidence tends to prove. When reviewing the record, we are required to disregard all evidence which is unfavorable to the findings of the Board and consider only those facts and those reasonable inferences which support such findings. *Lincoln v. Whirlpool Corporation* (1972), 151 Ind. App. 190, 279 N.E.2d 596, 598–99.

## I.

■ The phrase "in the course of employment" refers to the time, place and circumstances under which the accident[1] took place. *Skinner v. Martin* (1985), Ind. App., 455 N.E.2d 1168. More specifically,

"[a]n accident occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be, and while he is fulfilling the duties of his employment, or is engaged in doing something incidental thereto." *Wayne Adams Buick, Inc. v. Ference* (1981), Ind.App., 421 N.E.2d 733, 735; *see Indiana & Michigan Electric Co. v. Morgan* (1986), Ind.App., 494 N.E.2d 991.

Indiana courts have previously held the period of employment encompasses a reasonable time before and after the employee engages in work. *Goldstone v. Kozma* (1971), 149 Ind.App. 626, 274 N.E.2d 304; *Reed v. Brown* (1958), 129 Ind.App. 75, 152 N.E.2d 257. They have also confirmed employer-controlled parking lots are extensions of the employer's operating premises, *Ward v. Tillman* (1979), 179 Ind.App. 626, 386 N.E.2d 1003; *Donahue v. Youngstown Sheet and Tube* (1985), Ind., 474 N.E.2d 1013, and thus a place where an employee may reasonably be. Finally, the courts have held employees are doing something incidental to their employment in going and leaving the work place while they are still on their employer's premises. *Ward v. Tillman*, supra, 386 N.E.2d 1003; *see Segally v. Ancerys* (1985), Ind.App., 486 N.E.2d 578.

■ The fact Dacus had just finished his work shift when he was fatally shot in his employer's parking lot supports the Industrial Board's determination Dacus's death occurred in the course of his employment.

## II.

■ The phrase "arising out of" employment refers to the origin and cause of the injury. *Armstead v. Sommer* (1956), 126 Ind.App. 273, 131 N.E.2d 340. For an accident to arise out of employment, there must be a causal relationship between the employment and the injury. However, such a connection is established when the accident arises out of a risk which a reasonably prudent person might comprehend as incidental to the work. It is not necessary

---

**1.** Blaw-Knox does not dispute Dacus' death was   an accident.

that the injury should have been expected or foreseen. *Skinner v. Martin,* 455 N.E.2d at 1170.

Blaw-Knox argues because Dacus was killed by an unknown assailant for unknown reasons, he did not sustain his injuries through some risk or hazard inherent in or peculiar to his employment. Rather, Dacus encountered a risk to which the general public was and is equally exposed and, therefore, the necessary causal relationship between Dacus's death and his employment is absent.

Cognizant of our standard of review, we find support in the facts for the Board's conclusion the necessary causal relationship exists. Dacus was killed in a fenced, lighted parking lot adjacent to 4440 Railroad Avenue, East Chicago which was locked except an hour before and after shift changes. He was killed at 11:20 p.m., shortly after his shift ended. The hours of his employment necessitated his presence in the parking lot on a work week daily basis at the late hour. The employer's efforts in providing the secured lot reasonably support the Board's determination the area was a place of danger, especially considering the hours of his employment. These facts, coupled with the fact the general public did not have access to the lot, and in fact, no one had access to the lot except at limited intervals, reasonably supports the Board's determination the risk to which Dacus was exposed was definitely higher than that of the general public. Accordingly the Board's determination Dacus's risk of injury arose out of his employment, i.e., it was a risk which a reasonably prudent person might comprehend as incidental to the work, and, specifically, was a risk inherent in his employment, is sustained by the reasonable inferences drawn from the undisputed facts.

Judgment affirmed.

BUCHANAN, J., concurs.

SULLIVAN, J., dissents, with separate opinion.

SULLIVAN, Judge, dissenting.

Although I concur with respect to Issue I, I dissent as to Issue II.

The only interpretation which can be placed upon the majority's holding is that any injury sustained late at night shortly after working hours in a fenced and lighted employee parking lot is an injury which arose out of and in the course of the employment. I cannot subscribe to such an unwarranted and overly broad construction of the Workmen's Compensation statute.

I believe that the majority's reliance upon *Skinner v. Martin* (1983) 1st Dist. Ind.App., 455 N.E.2d 1168, is inappropriate. In *Skinner,* the altercation occurred during a coffee break on the premises and arose precisely because Skinner would not return to his job task upon request. The injury therefore clearly arose as a result of Skinner's job duties or his refusal to perform them. Subsequently in *Martin v. Powell* (1985) 1st Dist. Ind.App., 477 N.E.2d 943, the same panel declined to apply the "arising out of" principles of *Skinner* to a situation which involved a personal incident as opposed to a work-related incident.

In the case before us, the evidence does not disclose that the shooting incident was work related. Because of the circumstances, it would appear quite to the contrary. In any event, I do not believe the *Skinner* case supports the majority decision here.

In *Olinger Construction Co. v. Mosbey* (1981) 2d Dist. Ind.App., 427 N.E.2d 910, the majority adopted a positional risk or "but for" test. The rule was specifically limited to traveling employees. It would seem that now, however, the majority seeks to extend that doctrine to all employees and to hold that an accident arises "out of" the employment any time "the employee is at the place the accident occurs because of his employment." 427 N.E.2d 910, 915. For this reason, I consider my dissenting opinion in *Olinger* to warrant and necessitate my dissent here. 427 N.E.2d 910, 916–919.

I would reverse the award and direct that it be set aside.