Judith CLEMANS, Appellant–Plaintiff,

v.

WISHARD MEMORIAL HOSPITAL,
Appellee–Defendant.

No. 93A02–9910–EX–714.

Court of Appeals of Indiana.

April 25, 2000.

Rehearing Denied July 10, 2000.

Jerry Garau, Findling Garau Germano & Pennington, P.C. Indianapolis, Indiana, Attorney for Appellant.

Robert A. Fanning, Julia Blackwell Gelinas, Locke Reynolds, LLP Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-plaintiff Judith Clemans ("Clemans") appeals from the denial by the Worker's Compensation Board ("the Board") of her claim under the Worker's Compensation Act ("the Act"),[1] alleging injuries arising out of and in the course of her employment with Wishard Memorial Hospital ("Wishard"), the appellee-defendant.

We reverse.

### Issues

Clemans presents a single restated issue for our review: whether the Board erred in concluding that she did not sustain an injury arising out of and in the course of her employment with Wishard.

### Facts[2] and Procedural History[3]

Clemans was a laboratory technician for Wishard and worked on the main level of Wishard's Regenstrief Building. She parked her car in an employee parking lot provided by Wishard known as the West Lot. Wilson Street, a public thoroughfare neither owned nor controlled by Wishard, runs between the Regenstrief Building and the West Lot. There are two paths that Wishard employees can take to access the West Lot from the Regenstrief Building: they can either exit the Regenstrief Building through its main level doors and cross Wilson Street directly; or they can go to the lower level of the Regenstrief Building, enter a tunnel that crosses beneath Wilson Street, exit the tunnel into an adjacent physician's parking lot, and from there walk to the West Lot. Wishard employees are not encouraged or required to use the tunnel to reach the West Lot, and means of access to the West Lot is left to the employee's discretion.

On the afternoon of April 9, 1998, Clemans completed her duties at Wishard, exited the Regenstrief Building on the main level, and began walking toward the West Lot. She was crossing Wilson Street outside the boundaries of its marked pedestrian crosswalk when she was struck by a car and injured.

---

1. See IND.CODE §§ 22–3–1–1 to 22–3–12–5.

2. The facts of this case were stipulated to by both parties and are undisputed.

3. We heard oral argument in this case on March 10, 2000 in Indianapolis, Indiana. We commend both parties for the quality of their advocacy, both oral and written.

As a result of her injuries, Clemans filed an application for worker's compensation benefits on August 18, 1998. After a hearing, a single hearing member of the Board denied Clemans' claim for compensation under the Act and entered his findings as follows:

1. It is ... found that the factual matters herein are not in dispute, the same having been stipulated to by the parties.

2. It is further found that based on such stipulated facts, the undersigned does conclude that the plaintiff did not suffer an accidental injury arising out of and in the course of her employment. This conclusion is based on the fact that the plaintiff was not on the premises of the defendant but in fact was on a public street not owned, controlled, or maintained by the defendant.

3. It is further found that the plaintiff was exposed to no special hazard greater than the public at large by the use of the public street and an alternate means of accessing the defendant's parking lot by way of a covered tunnel was available.

4. It is further found, therefore, that plaintiff shall take nothing by her application filed herein.

The full Board summarily affirmed the decision of the single hearing member on September 17, 1999, with four members of the Board concurring and three members dissenting.

### Discussion and Decision

■ The Act provides compensation for employees who suffer injuries that occur "by accident arising out of and in the course of their employment." IND.CODE § 22–3–2–5. The determination of whether an injury arises out of and in the course of employment is fact-sensitive and depends upon the circumstances of each case. *Construction Management and Design, Inc. v. Vanderweele,* 660 N.E.2d 1046, 1049 (Ind.Ct.App.1996), *trans. denied.* However, if the facts pertinent to the question of liability are not in dispute, as here, the question becomes one of law for the courts to decide. *Id.* When reviewing a decision of the full Board, this court is not bound by the Board's interpretation of the law, and we will reverse a decision if the Board incorrectly interprets the Act. *Duvall v. ICI Americas, Inc.,* 621 N.E.2d 1122, 1124 (Ind.Ct.App.1993). Nevertheless, we will pay due deference to the interpretation of a statute by the administrative agency charged with its enforcement in light of its expertise in its given area. *Ballard v. Book Heating & Cooling, Inc.,* 696 N.E.2d 55, 56 (Ind.Ct.App.1998), *trans. denied.*

■ Our analysis in this case proceeds from the well-settled precept that the Act, being remedial in nature, should be liberally construed to accomplish the purpose for which it was enacted; consequently, it should be liberally construed in favor of employees and beneficiaries. *See Goldstone v. Kozma,* 149 Ind.App. 626, 631–32, 274 N.E.2d 304, 307 (1971). It is also well recognized that the words "arising out of" and "in the course of employment" as they are used in the Act should be liberally construed to accomplish the humane purposes of the Act. *Id.,* 149 Ind.App. at 632, 274 N.E.2d at 308. "Arising out of" and "in the course of" are two separate and distinct elements: the "in the course of" element refers to the time, place, and circumstances of the accident, while the "arising out of" element refers to the causal connection between the accident and the employment. *K-Mart Corp. v. Novak,* 521 N.E.2d 1346, 1348 (Ind.Ct.App. 1988). Specifically,

[t]he employment is not limited to the exact moment when the workman reaches the place where he is to begin his work, or to the moment when he ceases that work. It necessarily includes a reasonable amount of time and space before and after ceasing actual employment, having in mind all the circumstances connected with the accident.

*Reed v. Brown,* 129 Ind.App. 75, 82, 152 N.E.2d 257, 259 (1958) (citations omitted). An injury arises out of employment when a causal nexus exists between the injury sustained and the duties or service performed by the injured employee. *Burke v. Wilfong,* 638 N.E.2d 865, 869 (Ind.Ct.App. 1994). Such a nexus is established "when a reasonably prudent person considers a risk to be incidental to the employment at the time of entering into it." *Id.*

■ Wishard relies heavily on the proposition that merely traveling to or from work is not considered to be within the scope of employment; thus, without more, accidents that occur during these periods are not recoverable under the Act. *See Segally v. Ancerys,* 486 N.E.2d 578, 581 (Ind.Ct.App.1985). However, a public policy exception to this rule has been expressly created by our courts to extend coverage of the Act to those accidents resulting from employees' ingress to or egress from their employer's operating premises or extensions thereof. *Id.* For instance, this court has held that employer-controlled parking lots and private drives used by employees are extensions of the employer's operating premises for purposes of coverage under the Act. *See Lawhead v. Brown,* 653 N.E.2d 527, 529 (Ind.Ct.App. 1995) (parking lot); *United States Steel Corp. v. Brown,* 142 Ind.App. 18, 22, 231 N.E.2d 839, 842 (1967) (private drive).

In keeping with these principles, we conclude as a matter of law that the injuries Clemans sustained as she was crossing Wilson Street arose out of and in the course of her employment with Wishard such that she is entitled to recovery under the Act. In particular, the injuries she sustained in that accident resulted from her egress from Wishard's operating premises and are therefore compensable.

In so holding, we turn to the court's well-reasoned opinion in *Reed,* which involved a private driveway that ran through the employer's property and crossed a set of railroad tracks owned and maintained by the railroad company. The property was subject to the operating easement of this railroad company, but the land and private driveway on both sides of the tracks was owned by the employer. There were two means of access to the building where the employee worked: one where no flasher signals were posted at the point where the private driveway crossed the tracks, and one where flasher signals were posted. The employee was driving to work using the private driveway without flasher signals when he was struck and killed by an oncoming train. In concluding that the accident on the railroad tracks arose out of and in the course of the employee's employment, the *Reed* court held:

It has been stated that in attempting to define in part what constitutes a reasonable time and space for ingress to and egress from the place of employment, the courts have seemed to set the boundary roughly at the employer's premises.... [T]he term, employer's premises, has been construed to mean any premises which the parties contemplate shall be used for ingress and egress, regardless of ownership. "The overwhelming weight of authority permits a very broad definition of 'premises,' not only to include premises owned by the employer, but also premises leased, hired, supplied, or used by him, even private alleyways merely used by the employer."...

It seems clear from [the stipulated facts] that the appellants contemplated that the decedent, at his own election, should have the right to use and travel upon said private driveway in going to and from his work. In fact, it seems not amiss to say that decedent was, in effect, invited by appellants to avail himself of such route.... While not stipulated, the inference is irresistible that passage over ... said private driveway across the tracks afforded a much quicker, shorter and more convenient route to and from the place of employment.

*Notwithstanding appellants had no "control" over the real estate "described in said easement," the fact is evident that appellants' driveway extended across the tracks and the land on each side thereof and that decedent was authorized and permitted, at his election, to travel thereon to and from his work. The fact, together with the stipulated fact that appellants owned the real estate transversed by the railroad tracks and the land on both sides thereof, rendered it clear, we think, that when decedent turned his automobile ... onto said driveway and had proceeded thereon at least 49 feet toward the place he was to report for work at which point he was struck by the train, he was then on the "premises" of the appellants....*

*Being rightfully upon appellants' private driveway which crossed the tracks of the railroad situated upon appellants' land, at the time and place and under the circumstances and conditions here exhibited, it seems clear that decedent was subjected to the risk of a hazard which was incidental to his employment.*

*Id.*, 129 Ind.App. at 84–90, 152 N.E.2d at 260–63 (citations omitted, emphasis added).

■ We see no distinction between the railroad tracks at issue in *Reed* and the public thoroughfare at issue in the instant case. Wilson Street separated Wishard's premises into two sections: the Regenstrief Building where Clemans worked and the West Lot where she parked her car. Both the Regenstrief Building and the West Lot were owned and exclusively maintained by Wishard. In order to access the West Lot upon completing her daily duties in the Regenstrief Building,

Clemans had the right to cross Wilson Street, at her election.[4] Just as the employee in *Reed* was subjected to an incidental risk every time he crossed the railroad tracks to access the building where he worked, so too was Clemans subjected to an incidental risk every time she crossed Wilson Street to access the vehicle which brought her to work in the first place. *See Reed*, 129 Ind.App. at 90, 152 N.E.2d at 263; *Burke*, 638 N.E.2d at 869. Indeed, it would be disingenuous of Wishard to argue it did not contemplate that Wilson Street, regardless of its ownership, would be used as the most convenient and reasonable means of ingress to and egress from its operating premises.

Moreover, Clemans crossed Wilson Street only moments after completing her duties at Wishard and was within close proximity to both the Regenstrief Building and the West Lot at the time she was struck and injured. "[I]f the injury occurred fifteen minutes before or after working hours and within one hundred feet of the employer's premises, *on sidewalks or public roads*, the question of 'in the course of' the employment is flatly raised." *See Reed*, 129 Ind.App. at 83, 152 N.E.2d at 260 (citation omitted, emphasis added). Therefore, Clemans' injuries arose out of and in the course of her employment with Wishard.

Wishard, nevertheless, urges this court to draw the line of an employer's liability at the public thoroughfare. In essence, it asks us to create a zone of temporal and spatial immunity while Clemans crossed from one portion of Wishard's premises to the other. Under this scenario, Clemans would have been entitled to compensation under the Act only if she had made it across Wilson Street and then been in-

---

**4.** We note that the fact Clemans crossed Wilson Street outside of the designated crosswalk is not relevant to her claim under the Act. It is well settled that issues of negligence are not to be considered in worker's compensation claims. "All that is required is that a plaintiff prove that his injuries were the result of an accident arising out of and in the course of employment. Once a plaintiff has made such a showing, he is entitled to compensation." *Hass v. Shrader's, Inc.*, 534 N.E.2d 1119, 1121 (Ind.Ct.App.1989) (holding that while employee was probably negligent in the operation of his truck, this was not an issue to be considered).

jured in the parking lot, or if she had never left the Regenstrief Building at all and then been injured. This result, however, is contrary to the logic of existing ingress-egress cases and the liberal construction necessary to further the humane purposes of the Act. As our supreme court summarized in part in *Prater v. Indiana Briquetting Corp.*, 253 Ind. 83, 89, 251 N.E.2d 810, 813 (1969):

> [L]iability ... depends on the finding of a causal connection between the accident and the employment. *The actual situs of the injury, although a consideration, is not controlling.* Also to be considered are the conditions and circumstances existing at the time, the type of activity in which the injured party was engaged when injured and its relationship to his duties as an employee, [and] the reasonableness of such act in relation to the sum total of conditions and circumstances constituting the work setting[.]

(Emphasis added).

The undisputed evidence reflects that Clemans was not injured on just any public street, but on a street which all parties undoubtedly contemplated she would cross in order to access the employee parking lot. Wilson Street separated the Regenstrief Building from the West Lot and was, for these purposes, a part of Wishard's operating premises. *See Reed*, 129 Ind. App. at 89, 152 N.E.2d at 262. This conclusion is further consistent with the U.S. Supreme Court's observations in *Bountiful Brick Co. v. Giles*, 276 U.S. 154, 155, 48 S.Ct. 221, 222, 72 L.Ed. 507 (1928):

> Employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, *or over those of another in such proximity and relations as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance.... [I]t is clear that in some cases the rule [of coverage] extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer.*

(Citations omitted, emphasis added); *see also Goldstone*, 149 Ind.App. at 637, 274 N.E.2d at 311 (holding that employee injured in parking lot presumably owned and maintained by office building owner and not by employer who leased space in the office building was entitled to compensation; "a liberal construction of the employers' premises in this case could ... include the parking area used by appellants' employees for parking and as ingress and egress to and from the place of employment. *The fact that the employer may not have owned the premises or that the proof of ownership was absent is not fatal to the employee's claim.* This point was made very clearly in the case of *Reed v. Brown*, supra." (Emphasis added)). Given the facts of this case, we decline to draw the line of liability at Wilson Street.

Additionally, we note that the presence of an alternative and clearly less convenient route to the parking lot is not dispositive of Clemans' position on appeal. Wishard stipulated that it neither encouraged nor discouraged Clemans from using the tunnel. When left to the employee's discretion, the most reasonable inference would have been that Clemans, and all similarly situated employees, would choose the more convenient route, namely, exiting the Regenstrief Building on the main level and crossing Wilson Street directly. In discounting the impact of an alternative route on the employer's liability in *Reed*, the court observed:

> The decedent possessed the right, according to the stipulation, to travel to his

work upon the private driveway supplied by appellants across the railroad tracks and over their land. It is apparent, therefore, that appellants not only acquiesced in decedent's use of said way over their land but that they intended that decedent was to avail himself thereof, at his own choosing. Under such circumstances, it does not lie in the mouth of appellants to now say that there was another way which decedent could have used and, since he did not do so, he brought about his own hazard, and the dire results of his mischoosing must be attributed to him and not to appellants. There is no stipulation or evidence that appellants had ever notified or warned decedent that he should not use this particular route nor that they suggested to him that he should use the other route.... *It seems logical to hold, under such circumstances, that since appellants gave decedent the right to elect which route he cared to travel, his election to follow the route he took would have the same legal effect and consequences as if he had been "required" by appellants to take that route and consequently be at the particular place where the accident occurred.*

*Reed,* 129 Ind.App. at 88–89, 152 N.E.2d at 262–63 (emphasis added). Likewise, Clemans' election to cross Wilson Street directly instead of using the tunnel had the same legal effect and consequences as if she had been required to do so by Wishard.

Finally, Wishard relies heavily on *Donahue v. Youngstown Sheet & Tube Co.,* 474 N.E.2d 1013 (Ind.1985), which we find to be clearly distinguishable from the instant case. In *Donahue,* the employee had completed her duties and clocked out, left her employer's operating premises, and was crossing a public street to access her car which she had parked on the street when she was struck by another vehicle. The employer had not directed the employee to park her car on the public street, but rather, had provided an employee parking lot located on the same side of the street as the operating premises. Our supreme court affirmed the Board's denial of compensation under the Act and referenced the cases of *Reed,* 129 Ind.App. at 85–90, 152 N.E.2d at 261–63; *Goldstone,* 149 Ind. App. at 637, 274 N.E.2d at 311; and *Brown,* 142 Ind.App. at 22, 231 N.E.2d at 842, noting that "[c]ases allowing recovery for injuries incurred while away from the employer's premises involved employees engaged in activities which are found to be, in some material respect, incidental to employment or beneficial to the employer." *Donahue,* 474 N.E.2d at 1016.

The employer in *Donahue* could not have reasonably contemplated a need for an employee to cross a public street, where it provided an employee parking lot on the same side of the street as its operating premises. In essence, the employee in *Donahue* had no reason related to her employment to cross the public street, and when she did so, the act was not incidental in any way to her duties with the employer. Here, on the other hand, it is undisputed that Wishard provided its employees with a parking lot used exclusively by employees and located directly across the street from the Regenstrief Building. This undisputed evidence leads inescapably to the conclusion that Wishard contemplated Clemans would cross Wilson Street to gain access to that parking lot and the car in which she drove to work. As such, Clemans' act of crossing Wilson Street from the Regenstrief Building to the West Lot immediately after completing her duties was materially incidental to her employment. *See id.*

Moreover, while the employee in *Donahue* was injured "on a public thoroughfare and the hazards and dangers of her accident were common to all persons using that public way," *see id.,* Clemans did not cross Wilson Street as a member of the general public but did so for the sole purpose of egressing from her place of employment. Absent her employment with Wishard, she presumably would not have

crossed Wilson Street and would not have been subjected to the risk of being struck by a car on that thoroughfare. Crossing Wilson Street was incidental to her daily duties as an employee in the Regenstrief Building, and thus, her "exposure to the hazard which caused [her] injury was increased by reason of her employment." *See Segally,* 486 N.E.2d at 581; *see also K–Mart,* 521 N.E.2d at 1350 (upholding award by Board for beneficiaries of K–Mart employee who was shot to death and noting, "[T]he evidence established that Margaret was at her station in the K–Mart store because of her employment. Absent her employment, Margaret would not have been required to be at the store, and would not have been subjected to the risk of death at the hands of a lunatic gunman. Thus, the risk was connected causally to, and was an incident of Margaret's employment with K–Mart.").

In sum, we conclude as a matter of law that Clemans was entitled to compensation under the Act for the injuries she sustained while crossing Wilson Street. Those injuries arose out of and in the course of her employment with Wishard, and the Board erred in concluding otherwise.

Reversed.

NAJAM, J., and ROBB, J., concur.