PRATER *v.* INDIANA BRIQUETTING CORP.

[No. 1069S256. Filed October 30, 1969.]

*William I. Garrard, Graham, Rasor & Harris,* of Warsaw, for appellants.

*Hunt, Suedhoff & Wilks,* of Fort Wayne, for appellee.

ON PETITION TO TRANSFER

HUNTER, J.—This action involves a claim for death benefits under the Indiana Workmen's Compensation Act against the Indiana Briquetting Corporation, appellee. The appellants are individually, the widow, and the widow as natural guardian of the minor child of deceased. Hearing was had before a single member of the Industrial Board and the Full Board, and upon a finding adverse to appellants in both instances, appeal was taken to the Appellate Court. The Full Industrial Board finding was affirmed by that court, *Prater* v. *Indiana Briquetting Corp.* (1969), 144 Ind. App. 359, 246 N. E. 2d 206, and we accepted transfer.

The evidence most favorable to the appellee discloses the following: Appellant's decedent, Earmon Prater, on November 3, 1966 was employed by the Indiana Briquetting Corp., appellee, on the night shift running from 5 o'clock P.M. until five o'clock A.M. One other person was also working in the plant on the night of the accident. Sometime after 8:00 P.M. the decedent and the other employee, one Vernon Ousley tossed a coin to determine who would buy Cokes. Decedent lost and

proceeded to a nearby business establishment, "Woodie's Rent-It" where a Coke machine was located. A railroad track was situated between appellee's plant and "Woodie's Rent-It" and as decedent was crossing the track he was struck and killed by by a passing train.

The sole issue in this case is whether decedent's injuries arose out of and in the course of his employment. In deciding this question, the Appellate Court held that the evidence was sufficient to support the Full Board's denial of benefits and that as a matter of law it was not forced to reach a contrary conclusion.

We disagree. It is established beyond doubt that the Workmen's Compensation laws are to be liberally construed. *Marshall* v. *Tribune-Star Publishing Co.* (1968), 142 Ind. App. 556, 236 N. E. 2d 508. *Indiana Toll Road Commission* v. *Bartusch* (1962), 135 Ind. App. 123, 184 N. E. 2d 34. *Pollock* v. *Studebaker Corp.* (1952), 230 Ind. 622, 105 N. E. 2d 513. *Louisville, N.A. & C. R. Co.* v. *Emily* (1938), 105 Ind. App. 123, 12 N. E. 2d 1002. With this proposition as a starting point, we must carefully analyze each case to determine whether the injury resulted from a situation which might be deemed to have arisen out of and in the course of the injured party's employment so as to be covered by the provisions of our Workmen's Compensation Law.

In scrutinizing the facts in the case at bar, we note, as did Judge Sharp on the Appellate Court, in his dissenting opinion, what we consider to be several significant factors: although there apparenty was an unwritten rule against leaving the premises during the working hours, the employees of appellee had for three or four years gone to "Woodie's Rent-It" to obtain soft drinks. In fact, the evidence indicates that the plant manager himself on various occasions had sent the employees after refreshments:

"Q. I am not sure of one thing. You have said that you were aware they went and got Cokes on their lunch

period over here. Were you aware that they went on day or night, they went and got them occasionally when they would take a break?

A. Well, I hoped that, being a good boss, a lot of times, I would send them to get Cokes or something. Being hot, I would send them down after root beer and coffee and doughnuts, every now and them.

Q. On occasion other than lunch period?

A. Yes, other than lunch period."

Also, there were only four or five employees in appellee's entire operation yet the plant manager could not recall actually telling the deceased he was not to leave the premises to get a soft drink on break periods. An employee who had worked at "Woodie's Rent-It" for three years testified that employees of appellee came to get soft drinks "quite frequently" or about every day and their visits were not limited to any particular time of day or night. The same employee who had been working with deceased the night of the accident testified that he was aware of the "policy" against leaving the premises but that he had been accustomed to getting soft drinks at "Woodie's" for three or four years and his supervisor had never said anything to him about it.

The mere fact that deceased was struck and killed while off the premise of his employer does not, of itself preclude recovery, and we have so held:

"Whether the accident occurred 'on' or 'off' the employer's premises is *but one factor among many which* we must consider in determining if a causal relation between the accident and employment exists." *United States Steel Corp.* v. *Brown* (1967), 142 Ind. App. 18, 231 N. E. 2d 839, 841. (our emphasis)

The crux of the issue then is whether or not there is a causal relation between the accident and the employment. *B.P.O. Elks, #209* v. *Sponholtz* (1969), 144 Ind. App. 150, 244 N. E. 2d 923. *Matthews* v. *Jim and Ed's Service Station* (1964), 136 Ind. App. 28, 196 N. E. 2d 282. *Mishawaka Rubber and Woolen Manufacturing Company* v. *Walker, et al.* (1949), 119

Ind. App. 309, 84 N. E. 2d 897. *Williams* v. *School of Winchester* (1937), 104 Ind. App. 83, 10 N. E. 2d 314. *Empire Health etc. Ins. Co.* v. *Purcell* (1921), 76 Ind. App. 551, 132 N. E. 664. A causal relation is said to exist when:

".. . the accident arises out of a risk which a reasonably prudent person might comprehend as incidental to the employment at the time of entering into it, or, when the facts show an incidental connection between the conditions under which [the] employee works and the injury." *Lasear, Inc.* v. *Anderson et al.* (1934), 99 Ind. App. 428, 434, 192 N. E. 762.

See also *Williams* v. *School City of Winchester,* supra, and cases there cited.

Early our courts held that an employee could be performing acts personal to himself and yet should an accident occur such accident would be considered to have arisen out of and in the course of employment:

"Such acts as are necessary to the life, comfort and convenience of the workman while at work, though personal to himself, and not technically acts of service, *are incidental to the service*; and an accident occurring in the performance of such acts is deemed to have arisen out of the employment. Such acts are regarded as inevitable incidents of employment, and accidents happening in the performance of such acts are regarded as arising out of and in the course of the employment." *Holland-St. Louis Sugar Co.* v. *Shraluka* (1917), 64 Ind. App. 545, 549, 116 N. E. 330. (our emphasis)

This doctrine has been re-affirmed and is still the law. *Vendome Hotel, Inc.* v. *Gibson* (1952), 122 Ind. App. 604, 105 N. E. 2d 906. *National Biscuit Co.* v. *Roth* (1925), 83 Ind. App. 21, 146 N. E. 410. *Wasmuth-Endicott Co.* v. *Karst* (1922), 77 Ind. App. 279, 133 N. E. 609.

In *National Biscuit, supra,* the court held that an employee has not abandoned or withdrawn himself from the scope of employment, if at the time of the injury he was doing some act which he might reasonably do, might reasonably be expected to do, or which might have been antic-

ipated by a reasonable person familiar with all the circumstances, conditions and nature of the work.

To summarize, liability in a situation such as the facts in the case at bar present depends on the finding of a causal relation between the accident and the employment. The actual situs of the injury, although a consideration, is not controlling. Also to be considered are the conditions and circumstances existing at the time, the type of activity in which the injured party was engaged when injured and its relationship to his duties as an employee, the reasonableness of such act in relation to the sum total of conditions and circumstances constituting the work setting, and the knowledge and acquiescence of the employer in certain situations where acts, incidental to employment, are being done in violation of the rules and the employer has knowledge or could reasonably be expected to know, yet does nothing to halt such infringements.

Certainly the securing of a Coke for refreshment during a break period is a normal incident of employment in this day and age. However, the mere fact that the obtaining of a Coke while on the job is reasonable and an act which the employer must anticipate as being an incident to the employment of work personnel, any injury occurring in the pursuance of that goal is not *ipso facto* arising out of and in the course of employment. The above named considerations must be carefully weighed against the facts of the case. For example, if appellee had had a Coke machine on the premises, a clear-cut and well understood policy prohibiting the leaving of the premises during working hours, and no knowledge, actual or constructive, or reason to believe or suspect that his employees were procuring soft drinks off the premises, an injury resulting from an employee's attempt to buy a Coke off the premises would presumably not be covered under Workmen's Compensation Law. Here however, the appellee did not have a Coke machine on the premises, and as we have already noted the employees had been accustomed to buying

soft drinks at Woodie's for several years. Appellee's silence in this regard, coupled with his failure to install his own Coke machine and the fact that the plant manager had sent employees to Woodie's on occasion, leads this court to the inescapable conclusion that appellee acquiesced in the practice.

Having already established that the procuring of soft drinks is incidental to the work experience, and having found that the conditions and circumstances under which decedent worked were such as to make the purchase of Cokes at "Woodie's" reasonable, and such practice having been acquiesced in by appellee we are compelled as a matter of law to find liability.

The Appellate Court apparently relied heavily on its decision in *B.P.O. Elks, #209* v. *Sponholtz, supra,* in reaching its decision in the instant case. That case may easily be distinguished from the facts here, however, since there the injured party had left the premises during working hours and had been driving around in his automobile for approximately two and one-half hours before the accident. The only apparent reason the injured party had left the premises of his employment was to take "a little breather". He was not performing any job errands at the time, nor any act reasonably incidental thereto. There was nothing in the statement of facts to show any habitual character in the employee's trip and a two and one-half hour jaunt could hardly be considered normal or necessary to his comfort on the job so as to make the personal character of the act incidental to his job. The factual differences between the two cases are obvious and we need not indulge in further distinctions.

Further, the Appellate Court quotes *Pittsburgh Testing Laboratories* v. *Kiel* (1960), 130 Ind. App. 598, 167 N. E. 2d 604 for the general proposition that an accident is not compensable where it occurs while an employee is traveling to or from his place of employment or which occurs while the employee is engaged in a personal mission not connected with

the duties of his employment. As a general statement of the law in such situations, we would agree. The evidence in this case shows however, that the decedent was not engaged in a "personal" mission in the sense used above, but was engaged in a mission normally incidental to any employment situation and within the normal hours of his employment. When such is the case and the facts make liability reasonable when viewed in relation to the considerations as outlined above, then liability shall attach.

All the facts before the single member of the Industrial Board and Full Board that are before this court growing out of the death of appellant's decedent and all reasonable inferences adduceable therefrom touching the question of the death of the decedent, unerringly point to but one conclusion, i.e., decedent's death arose out of and in the course of his employment.

Therefore, we hold that transfer should be granted and the order of the Industrial Board should be reversed.

For all the foregoing reasons the cause is hereby remanded to the Board with instructions to vacate the existing order and to make an appropriate award to the claimant.

Order *reversed.*

DeBruler, C.J., Arterburn and Givan, JJ., Concur. Jackson, J., Dissents.

NOTE.—Reported in 251 N. E. 2d 810.