**Shirley DONAHUE, Appellant,**

v.

**YOUNGSTOWN SHEET & TUBE COMPANY, Appellee.**

**No. 2–483A114.**

Court of Appeals of Indiana, First District.

Dec. 1, 1983.

Rehearing Denied Jan. 4, 1984.

---

Joseph P. Allegretti, Barry D. Sherman, Hammond, for appellant.

George E. Bloom, James E. Schreiner, Hammond, for appellee.

ROBERTSON, Presiding Judge.

Shirley Donahue (Donahue) appeals the Industrial Board of Indiana's decision to deny her Workmen's Compensation claim. The Board concluded that her injuries did not result from an accident which arose out of and in the course of her employment as a commissary employee for Youngstown Sheet & Tube Company (Youngstown). The sole issue before us on appeal is whether Donahue's injuries arose out of and in the course of her employment.

The parties stipulated the following relevant facts:

On October 17, 1978, plaintiff was employed by defendant at an average weekly wage in excess of the maximum for workmen's compensation purposes; that on said date she sustained accidental injuries of which defendant had notice; that defendant denied liability therefore under workmen's compensation;

. . . .

IT IS FURTHER STIPULATED that plaintiff's injuries were sustained on October 17, 1978, at approximately 10:19 p.m., on Dickey Road, a four lane public thoroughfare, located in the City of East Chicago, Indiana, running generally in a northwesterly-southeasterly direction; that plaintiff was crossing Dickey Road as a pedestrian in a general southwesterly direction when struck by a motor vehi-

cle in the inner northwesterly bound lane; that at said time and place, plaintiff had finished her work with defendant, had punched out, and was going to her motor vehicle parked along the southwesterly curb of Dickey Road; that there were automatic traffic control signals at the point where plaintiff was crossing Dickey Road.

IT IS FURTHER STIPULATED that the issues to be determined are whether or not plaintiff sustained an accidental injury arising out of and in the course of her employment, and if appropriate, the amount of permanent partial impairment resulting from said accidental injury together with the sum of $3,138.65 representing plaintiff's out-of-pocket medical expenses.[1]

The Board purported to summarize the evidence which was presented in addition to the stipulations:

## EVIDENCE

ROBERT L. LIPPMAN, Engineer, testified regarding his preparation of certain drawings which were subsequently used in witnesses testimony.

Plaintiff, SHIRLEY DONAHUE, testified regarding her employment and as to her procedures for clocking in and out throughout her employment with Defendant: that on October 17, 1978, Plaintiff was employed at Defendant's pipe mill canteen as a counterman which involved general cafeteria duties; that her employment duties were limited to that area and she had no duties with Defendant outside the canteen area. Plaintiff further testified that at the time in question she had voluntarily parked her automobile at the curb on Dickey Road and while crossing the street to her vehicle was struck by another vehicle in Dickey Road after she had clocked out; and that she was not directed by Defendant to park her vehicle along Dickey Road.

RAYMOND HAYES, JR., an employee of the Defendant's Engineering Department, testified that Defendant's premises do not include Dickey Road; that Dickey Road is a public street neither owned nor maintained by Defendant; that the traffic signals along Dickey Road near the tin mill gate are located on public property and not on property owned by Defendant.

RICHARD O. PRUITT, Plaintiff's Supervisor on October 17, 1978, at the pipe mill canteen, testified that although the normally designated clockhouse is at the pipe mill, some employees by choice punch out at the tin mill gate; that the employees were not instructed to punch out at the tin mill gate; that Plaintiff had no employment duties away from the pipe mill canteen and that her duties never required the use of an automobile.

JOSEPH J. CRNARICH, Workmen's Compensation Administrator for Defendant, testified that the offending driver, Jeffrey Slivka, was not an employee of Defendant on or about October 17, 1978. Additionally, the following exhibits were admitted into evidence: Plaintiff's Exhibits "A" through "F" being six (6) colored photographs depicting on October 17, 1978, the intersection at approximately 3001 Dickey Road, East Chicago, Indiana; the ingresses and egresses of the J & L plant at said intersection; traffic control lights; and miscellaneous buildings located at and near said intersection; Plaintiff's Exhibits "G" through "J" were entered by stipulation of the parties; said exhibits being an aerial map of Defendant's complex in East Chicago, Indiana, and detailed and scaled drawings of the complex depicting building, bridges, roads and factories located on said Defendant's complex, including Plaintiff's Exhibit "H" which is a scaled drawing of the area West of the number one (1) tin mill depicting Dickey Road and the intersection where subject matter accident occurred; employment office parking lot; visitors parking lot on South side of Dickey Road

---

1. The Board did not reach the latter two issues because of its determination that accident was not employment related.

near subject matter intersection; and employees parking lot located approximately four hundred (400) to six hundred (600) feet from subject matter intersection.

In reaching its decision, the Board found and emphasized that Donahue had completed her duties and clocked out, that she had left Youngstown's premises, that she was crossing a public street, that she was not directed to park her vehicle on Dickey Road, and that she was struck by a non-employee.

> Our analysis of [Donahue's] contention proceeds from the threshold appellate perspective that it is not this court's prerogative to weigh the evidence or judge the credibility of witnesses; in our review of the Board's findings and conclusions, we may consider only that evidence which tends to support its determination, *together with any uncontradicted adverse evidence.* Only when the evidence leads inalterably to a conclusion contrary to that reached by the Board will its decision be disturbed. (Emphasis added). (Citations Omitted).

*Talas v. Correct Piping Co., Inc.,* (1982) Ind., 435 N.E.2d 22, 26.

Our review has revealed that the Board erroneously ignored uncontradicted evidence and failed to consider admissions made by Youngstown pertaining to the location and control of traffic signals at the intersection where Donahue was hit.

Prior to the initial hearing on Donahue's claim, her counsel filed requests for admissions. When the defendant failed to make a timely response, the hearing officer ruled that the issues raised in the requests were admitted. Therefore, the following facts were before the Board:

> [A]ll traffic control signals located at the intersection of 3001 Dickey Road, East Chicago, Indiana, are located on the defendant's property.

> [A]ll traffic control signals located at the defendant's old plant entrance, located at 3001 Dickey Road, are maintained by the defendant through a maintenance contract with New Era Corporation.

Additionally, Richard Pruitt, Donahue's supervisor, testified his employees were instructed to clock out at the time clock located on the side of the defendant's plant where they had worked on any given day. The plant was divided into two sections which were referred to as the "steel-side" and the "tin mill side". The steelside clockhouse was at the pipe mill and the tin mill side clockhouse was at the tin mill gate on Dickey Road.

However, Pruitt also testified that he was aware Donahue had punched out at the tin mill clockhouse on more than one occasion. In response to being asked whether the employee had a choice of which clockhouse to use, Pruitt responded that the employees were not told which clockhouse to use. He also stated that his employees were not allowed to use parking lots near the tin mill clockhouse. There was a parking lot across Dickey Road from the tin mill entrance and one within the plant adjacent to the tin mill clockhouse. The nearest available lot was 400 to 600 feet west of the tin mill entrance and clockhouse.[2]

Pruitt also explained that Donahue worked a 2:30 p.m. to 10:30 p.m. shift at the canteen.

■ We first note that a determination of whether an employee's injuries arose out of and in the course of his employment is especially dependent on the facts and circumstances of each case. *E.g. L.W. Edison, Inc. v. Teagarden,* (1981) Ind.App., 423 N.E.2d 709; *Prater v. Indiana Briquetting Corporation,* (1969) 253 Ind. 83, 251 N.E.2d 810. In *Prater,* Justice Hunter aptly described the analysis involved in resolving this issue and discussed several factors to be considered.

---

2. Another employee, Joseph J. Crnarich who was the defendant's Workmen's Compensation Administrator, attempted to contradict Pruitt's statement about access to parking lots. However, Crnarich explained his duties did not involve traffic regulation and that he was not familiar with procedures during the evening shift. Thus, he failed to offer contradictory evidence.

To summarize, liability in a situation such as the facts in the case at bar present [sic] depends on the finding of a casual relation between the accident and the employment. The actual situs of the injury, although a consideration, is not controlling. Also to be considered are the conditions and circumstances existing at the time, the type of activity in which the injured party was engaged when injured and its relationship to his duties as an employee, the reasonableness of such act in relation to the sum total of conditions and circumstances constituting the work setting, and the knowledge and acquiescence of the employer in certain situations where acts, incidental to employment, are being done in violation of the rules and the employer has knowledge or could reasonably be expected to know, yet does nothing to halt such infringements.

251 N.E.2d at 813.

■ Applying this reasoning to Donahue's case, we are led to a conclusion contrary to the Board's decision. Donahue was engaged in an act incidental to her employment, clocking out; she was following an employees' custom in clocking out at the tin mill. Her supervisor was aware of the employees' custom and given the location of available employee parking, he should have been aware these employees were parking on Dickey Road to reach the tin mill clockhouse. The company took no action to stop Donahue and other employees from clocking out at the tin mill despite a policy which required employees to clock out on the side of the plant where they had worked. The maps and photographs introduced into evidence show that the intersection where Donahue was injured is composed of a public road and two entrances to Youngstown's plant, one north and one south of Dickey Road. Given the admissions that the traffic signals at the intersection were on Youngstown's property and were maintained by Youngstown, it is apparent the defendant exercised some control over the intersection. Therefore, Donahue's injuries arose out of and in the course of her employment.

■ Our decision is supported by two analogous cases. In *Prater, supra,* an employee was killed while he was away from his employer's premises and while he was performing a personal act, getting a soft drink. The court noted that employees perform acts which are incidental to their employment, although these acts are not technically acts of service. The court referred to such acts as "inevitable incidents of employment". 251 N.E.2d at 312. Donahue's act of clocking out was also an inevitable incident of her employment and a less personal act than an employee's trip for a soft drink. Additionally, in *Prater,* the court noted that the employer had acquiesced to the employees' custom by failing to take any action to stop it. Likewise, Youngstown, in the person of Donahue's supervisor, was aware steel-side employees were using the tin mill clockhouse, but Youngstown took no action to terminate the custom even though it purportedly violated a company policy.

The situs of the accident also has a bearing on our decision. Youngstown argues Donahue was on a public highway which therefore, should preclude Workmen's Compensation coverage. However, an employee does not necessarily have to be on his employer's premises for his injuries to be covered. In *Prater,* the court examined the circumstances to determine if it was reasonable for the employees to leave their employer's premises to obtain the soft drinks. The court concluded it was reasonable because no facilities were available at the job site. The maps of Youngstown's plant reveal that Dickey Road is bordered on both sides by the plant. In turn, Dickey Road intersects Riley Road which runs northeast and is also bordered on both sides by Youngstown's plant. Several hundred yards up Riley Road, is a parking lot where Donahue usually parked her car. She drove down Riley Road to Dickey Road and stopped across from the tin mill entrance. Because of the physical surroundings, the distances involved, and the time of day, it was reasonable for Donahue to use these roads to reach the clockhouse.

Youngstown also relies on cases such as *Markley v. Richmond Glove Corp.*, (1959) 129 Ind.App. 325, 156 N.E.2d 407, to support its assertion that her accident was not employment related. In *Markley,* the employee was injured when she fell on an ice covered public sidewalk in front of her employer's building. The court emphasized the employer neither owned nor controlled the sidewalk and denied coverage. However, we find Donahue's case is more closely analogous to the facts in *L.W. Edison, Inc. v. Teagarden, supra.*

In *Teagarden,* an employee was killed while driving on a public highway which was closed to the public because of construction. The employee was involved in the construction project and was using a customary route to reach his job site. Judge Hoffman concluded the highway was part of the employer's premises for workmen's compensation purposes because the employer exerted control over it.[3] In the case at bar, Youngstown exerted some control over the intersection on Dickey Road where Donahue was injured as evidenced by the admissions concerning location and maintenance of the traffic signals. Furthermore, the intersection is composed of a public road and two private drives on Youngstown's property. Given these facts, it would be unreasonable to deny Donahue workmen's compensation benefits on the basis that she was away from her employer's premises.

We conclude Donahue's injuries arose out of and in the course of her employment. The Board's decision is reversed and this case is remanded for further action.

Judgment reversed.

NEAL, J., concurs with separate opinion.

RATLIFF, J., dissents with opinion.

**3.** When an employee is injured on a *private road* controlled by his employer, the accident is considered to have arisen out of and within the scope of his employment. This is true even if the employee is away from the site where he performs his actual duties. *E.g. Reed v.*

NEAL, Judge, concurring.

The maps, aerial photographs, and ground level photographs included in the evidence reveal that Dickey Place is totally engulfed by the vast sprawling industrial complex of Youngstown, which dominates at least a one-half square mile area. In reality, Dickey Place is one of the interior roads used by the plant, and persons doing business there, as an internal route of communication and transportation.

Donahue worked at the Pipe Mill Canteen, located at least one-fourth mile from the Tin Mill clock-out point. Clocking out at the Tin Mill was not prohibited; rather, such behavior was acquiesced in by the management. Alternate clock-out points did exist, but it would appear some travel by Donahue would be necessary to reach those points. The route taken by Donahue to clock out at the Tin Mill did not at any point go beyond the plant complex. Once there, she parked her car at the stoplight, crossed Dickey Place and clocked out. She was struck as she recrossed Dickey Place to reach her car.

Requests for admissions which would tend to establish that the stoplight is on property owned and maintained by Youngstown were not denied. Under Ind.Rules of Procedure, Trial Rule 36, by failing to answer such requests, the facts contained therein are conclusively established. However, the rules of civil procedure are not binding on the Industrial Board. *Pedigo v. Miller,* (1977) 175 Ind.App. 97, 369 N.E.2d 1100; *Russell v. Johnson,* (1943) 220 Ind. 649, 46 N.E.2d 219; *Trustees of Indiana University v. Rush,* (1934) 99 Ind.App. 203, 192 N.E. 111. Also, other evidence at trial indicated the stoplight is not on Youngstown's property, and is not maintained by it.

There are cases holding that an employee's coverage under workmen's compensation does not necessarily cease at the point of clocking out. *O'Dell v. State Farm Mu-*

*Brown,* (1958) 129 Ind.App. 75, 152 N.E.2d 257; *United States Steel Corporation v. Brown,* (1968) 142 Ind.App. 18, 231 N.E.2d 839; *see also, O'Dell v. State Farm Mut. Auto Ins. Co.,* (1977) 173 Ind.App. 106, 362 N.E.2d 862.

*tual Automobile Insurance Company,* (1977) 173 Ind.App. 106, 362 N.E.2d 862, held that where an employee of United States Steel Corporation was killed on a company private drive while exiting an employee parking lot on his way home, death arose out of and in the course of employment. That case states:

"... [P]ublic policy under the Act favors the liberal construction of making awards for accidents involving the ingress and egress of employees to their work premises on the theory that such accidents arise out of and in the course of employment. *Reed et al. v. Brown et al* (1958), 129 Ind.App. 75, 152 N.E.2d 257 (transfer denied); *Jeffries v. Pitman-Moore Co.* (1925), 83 Ind.App. 159, 147 N.E. 919. Thus while some nexus between the accident and the employment must exist, the question of whether an injury occurred on the operating premises of the owner is an important determinant of this connection and accordingly of what duty the employer owes under the Act. *U.S. Steel Corp. v. Brown* (1967), 142 Ind.App. 18, 231 N.E.2d 839 (transfer denied).

When, as here, there is a concentration of industrial machinery attended by a large number of employees, the operating premises of the employer extends to include the risks involved in that concentration. Clearly employee parking lots and private drives as an extension of these operating premises are considered within the employer's supervision.

For these reasons accidents occurring under such conditions of employment-related risk usually fall within the ambit of workmen's compensation. *Goldstone v. Kozma* (1971), 149 Ind.App. 626, 274 N.E.2d 304 (transfer denied)."

173 Ind.App. at 108–109, 362 N.E.2d 862. In *United States Steel v. Brown, supra,* course of employment status was held to exist though the employee had reached the public sidewalk after clocking out. *Reed v. Brown, supra,* found course of employment status began when the employee entered the employer's private drive on the way to work.

Because of the nature of the industrial complex, Youngstown is interlaced by public roads such as Dickey Place. Since it is used as an interior artery of communication and transportation by Donahue and others, Dickey Place is an integral part of Youngstown's operation, and this case is governed by *O'Dell, supra.* The fact that the accident happened on a highway, technically a public one, is not controlling; Donahue was still within the ambit of the plant, exiting to go home. I see no relevance in the fact that Donahue could have clocked out elsewhere, for fault is usually not a disqualification for workmen's compensation benefits.

RATLIFF, Judge, dissenting.

Worker's compensation benefits are awarded to employees only for injuries which arise both out of and in the course of the employment. Indiana Code section 22–3–2–2; *Slinkard v. Extruded Alloys,* (1971) 150 Ind.App. 479, 277 N.E.2d 176. Indeed, the claimant must show a causal connection between the employment and the injury in order for the injury to be received in the course of the employment. *Bowling v. Fountain County Highway Department,* (1981) Ind.App., 428 N.E.2d 80; *Slinkard.*

Whether or not an injury arises in the course of the employment ordinarily is a question of fact to be determined by the Industrial Board. *Burger Chef Systems, Inc. v. Wilson,* (1970) 147 Ind.App. 556, 262 N.E.2d 660. In reviewing a negative award by the Industrial Board, we do not reweigh the evidence or substitute our decision for that of the Board. *Bowling.* Rather, it is only where there is substantial undisputed evidence compelling a result contrary to that reached by the Board that we will overturn the Board's decision. *Id.*

The record supports the Board's conclusion that Donahue's injury was not received in the course of her employment. Compensation, therefore, was properly denied, and since the record supports that conclusion,

we should defer to the finding of the Board and affirm its decision. *Bowling.*

Therefore, I dissent.