COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Chaney and White
Argued at Lexington, Virginia


AUDRA L. POOLE

v.      Record No. 0701-24-3

QUEST DIAGNOSTICS, INC.

OPINION BY
JUDGE VERNIDA R. CHANEY
SEPTEMBER 9, 2025

PUBLISHED

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

James B. Feinman (Law Office of James B. Feinman, on brief), for
appellant.

(Lisa Reed Petersen; Schoenberg & Associates, on brief), for
appellee.  Appellee submitting on brief.


Audra Poole appeals the Workers' Compensation Commission's decision denying her

benefits for an injury sustained while traversing a crosswalk on a public street that separated her

employer's building from a public parking lot.  Poole challenges the Commission's decision that

no exception from the coming and going rule applied and that the extended premises doctrine

was inapplicable to the parking lot and crosswalk.  For the reasons that follow, this Court affirms

the Commission's decision.

BACKGROUND[1]

In January 2022, Quest Diagnostics hired Poole to work as a phlebotomist at its

laboratory inside Carilion's Roanoke Memorial Hospital.  On February 2, 2022, Poole fell on her

---

[1]  "On appeal from a decision of the [Virginia Workers' Compensation] Commission,
'the evidence and all reasonable inferences that may be drawn from that evidence are viewed in
the light most favorable to the prevailing party below'"—in this case, the employer, Quest
Diagnostics. *Jalloh v. Rodgers*, 77 Va. App. 195, 199 n.2 (2023) (quoting *City of Charlottesville
v. Sclafani*, 70 Va. App. 613, 616 (2019)).

way to work. Poole explained that after parking, she entered a "walkway from the parking garage" and then "walked on the crosswalk." While she was "halfway through" the crosswalk, she "slipped on ice, fell down, hit the ground," resulting in a fracture to her wrist. A witness picked her up and "whisked [her] away to the E.R." By the time of the hearing, Poole had undergone three surgeries to her wrist. Poole had no prior issues with her wrist and had "never broken a bone" before her crosswalk injury.

Poole has multiple sclerosis; she testified that she was instructed to "park anywhere there's a handicap spot as long as it's open." On the day of the accident, Poole stated that she parked "where [she was] told to park,"—a parking garage "next to the hospital." She also testified that there was only "one way" she could enter the hospital—the front entrance.

Testimony from Quest conflicted with Poole's account. Poole's supervisor, Alisha Ali, testified that during the interview, she informed Poole that "parking is challenging. There's a lot of traffic, a lot of foot traffic. You can park in the garages. There's not a specific place to park." Ali explained that Quest:

> [T]ell[s] employees and I'm speaking generally about parking. We tell them where to park. There's a parking garage called the Bellevue parking garage where you can come in through the tunnel and you're in the hospital and you don't cross the street at all. A lot of people park on the Riverwalk. That's an option. If there is a need for handicapped parking, which I'm handicapped, I'm a disabled veteran myself. I park in front of the hospital that's not under the cover, but it's on the right in front of the hospital. If you're a walker and you want to walk, there's parking beside the park. I also used to park on top of the hill and come in through the surgery entrance before the north.[2]

---

[2] This testimony was struck during the hearing. However, the deputy commissioner and the full Commission relied on it in their findings of fact. *See City of Charlottesville v. Sclafani*, 300 Va. 212, 222-23 (2021) ("The Commission's findings of fact 'are conclusive and binding on appeal,' provided that there is credible evidence to support those findings." (quoting *Carrington v. Aquatic Co.*, 297 Va. 520, 522 (2019))). Neither party raised an objection to the issue; thus, any error in using the stricken testimony is waived on appeal. *See* Rule 5A:18 ("No ruling of the

Ali also noted that the hospital had multiple entrances, including in the main lobby, the emergency department, and "under [the] tunnel . . . where the surgeries happen." Parking at "all of those entrances were open" on the day of the accident. Still, Ali acknowledged that the crosswalk where Poole fell is "a crosswalk that many Quest employees take" and was "one of the areas" that "[Quest] expect[ed] her to travel."

After the accident, Poole filed a claim for benefits, seeking a lifetime medical award and temporary total disability. After her initial hearing, the deputy commissioner denied Poole's claim, determining that the Commission "lack[ed] persuasive evidence signaling [the accident] happened in work's course." The full Commission later affirmed that judgment, finding that Poole had not shown that her accident occurred in the course of employment.

The Commission acknowledged the general rule that an employer is not liable for an employee's coming and going to work, but noted that there were exceptions. Ultimately, the Commission found that no exception applied to Poole's case. The Commission explained that exceptions to the coming and going rule did not apply because Poole presented "insufficient evidence for us to find that [Poole] was injured while coming to work on a route that was *the sole and exclusive* means of ingress and egress." (Emphasis added). The Commission also determined that the extended premises doctrine did not apply because Poole "failed to prove that the crosswalk on which she fell can be considered the employer's extended premises." The Commission explained:

> Here, we do not find the area in which the claimant fell constitutes
> a passageway or walkway as argued by the claimant. Rather, the
> claimant testified that she was in the crosswalk of the street when
> she fell. There is no evidence that the employer owned, controlled,
> or maintained the crosswalk. The evidence does not support the

. . . Virginia Workers' Compensation Commission will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."). The parties also relied on this testimony in their appellate briefs.

- 3 -

> claimant's argument that she was required to park in the garage
> where she parked or that this was the only entrance she could use.
> Based on the evidence presented, we agree with the Deputy
> Commissioner that the claimant did not prove the area where she
> fell could be considered the extended premises of the employer.

This appeal followed.

ANALYSIS

Standard of Review

Under Virginia's Workers' Compensation laws, a claim is compensable if it "ar[ose] out of and in the course of . . . employment." Code § 65.2-101. A finding by the Commission that an injury arose out of and in the course of employment is a mixed question of law and fact, which this Court reviews de novo. *Blaustein v. Mitre Corp.*, 36 Va. App. 344, 348 (2001). "It is fundamental that a finding of fact made by the commission is conclusive and binding upon this court on review. That contrary evidence may be in the record is of no consequence if there is credible evidence to support the commission's findings." *Southside Va. Training Ctr. v. Ellis*, 33 Va. App. 824, 828 (2000) (internal quotation marks omitted) (quoting *Georgia-Pacific Corp. v. Robinson*, 32 Va. App. 1, 4-5 (2000)). "[T]his Court is bound by the commission's factual findings so long as they are supported by credible evidence, even if 'contrary evidence may be found in the record.'" *Va. Emp't Comm'n v. Hale*, 43 Va. App. 379, 385 (2004) (quoting *Manassas Ice & Fuel Co. v. Farrar*, 13 Va. App. 227, 229 (1991)).

Extended Premises

Generally, an injury is not compensable when "an employee [is] going to and from the workplace." *Prince v. Pan Am. World Airways*, 6 Va. App. 268, 271 (1988). This is because an employee going to or coming from work is not usually "engaged in performing any services growing out of and incidental to [her] employment." *Wetzel's Painting & Wallpapering v. Price*, 19 Va. App. 158, 160 (1994) (quoting *Boyd's Roofing Co., Inc. v. Lewis*, 1 Va. App. 93, 94

- 4 -

(1985)).  This general rule is often called the "going and coming rule."[3]  *Cleveland v. Food Lion, L.L.C. # 0578*, 43 Va. App. 514, 520 (2004).  "Employment, however, cannot be rigidly limited by the walls of the specific space that constitute the workplace."  *Prince*, 6 Va. App. at 271.  This Court has recognized three exceptions to the coming and going rule where the manner in which the employee enters or exits the workplace is of value to or dictated by the employer:

> (1) where the means of transportation is provided by the employer or employee travel time is paid for,
>
> (2) where the way used is the sole means of ingress or egress or is constructed by the employer, and
>
> (3) where the employee is charged with some duty or task connected to his employment while on his way to or from work.

*United Cont'l Holdings, Inc. v. Sullivan*, 79 Va. App. 540, 551-52 (2024) (citing *Cleveland*, 43 Va. App. at 519).  Poole has not argued that any of these three exceptions apply, and no evidence suggests that they do.  Instead, Poole argues that the crosswalk and parking garage were part of her employer's "extended premises."[4]

"Distinct from the going and coming rule is the extended premises doctrine."  *Id.* at 552.  "Under the extended premises doctrine, the door to a workplace location 'extends to include adjacent premises used by the employee as a means of ingress and egress with the express or

---

[3] The rule has also been given similar names, including the "going to and from work" rule.  *Ramey v. Bobbitt*, 250 Va. 474, 478 (1995).

[4] Poole assigns five errors to the Commission's denial of her compensation claim.  Poole argues that the Commission erred "in not find[ing] that the accidental injury . . . arose out of and in the course of her employment."  In addition, she argues, "The Commission erred in finding [her] accidental injury was not compensable under the extended premises doctrine."  She also alleges, "the Commission erred in holding the extended premises doctrine is interrupted by the presence of a public street."  Further, she maintains that "the Commission erred by applying to the extended premises doctrine a limitation that a public street cannot be, in practical effect, part of the Employer's premises."  Finally, she asserts that "the Commission erred by ruling it was relevant and dispositive that there was no evidence that the Employer owned, controlled or maintained the public crosswalk when this is not required for compensability under the extended premises doctrine."

- 5 -

implied consent of the employer.'" *Id.* (quoting *Bountiful Brick Co. v. Giles*, 276 U.S. 154, 158 (1928)).  "When an employee is injured on the employer's extended premises, the employee is not transitioning from the workplace so as to implicate the 'going and coming' rule.  Rather, the employee has in fact arrived at the workplace."  *Id.* at 554.  The extended premises doctrine has been primarily applied in two contexts—injuries occurring in walkways or passageways and cases involving parking lots and structures.  *Id.*

A.  *Parking Lots*

Poole contends that the "parking garage was the 'extended premises' of [her] place of employment" because that is where Quest "instructed its employees on where to park."  When a parking lot is not owned, maintained, or controlled by the employer, application of the extended premises doctrine "rests on a combination of criteria, including but not limited to proximity, authority, and responsibility for maintenance."  *Cleveland*, 43 Va. App. at 519.  The evidence does not show that Quest had authority over the parking garage or was responsible for its maintenance.  Further, there was scant evidence regarding proximity at the hearing.  The Commission stated, "we received little describing the crosswalk's physical proximity to the hospital housing Quest's office.  We gather it separated the parking deck she used and the hospital entrance."  If the Commission lacked evidence to evaluate the proximity of the crosswalk to the hospital, it follows that the Commission lacked evidence to evaluate the proximity of the parking garage to the hospital.  Further, Poole's appellate brief fails to address the issue of proximity.  The burden was on Poole to prove her injury arose out of and in the course of her employment, including any associated criteria (e.g., proximity, authority, responsibility).

The Commission's determination that Poole did not meet the extended premises doctrine is supported by analogous caselaw.  In *Hunton & Williams v. Gilmer*, 20 Va. App. 603, 604,

607-08 (1995), we held that an employee's injury from slipping in a garage that she voluntarily paid to park at, owned by her employer's landlord, and located across the street from the workplace, did not arise in the course of her employment.

On the other hand, cases where parking lot injuries were found to arise out of and in the course of employment are distinguishable from this case. In some compensable cases, the employer owned the parking lot—which is not the case here. *See Brown v. Reed*, 209 Va. 562, 563 (1969) (finding an injury compensable where the vehicle of the tortfeasor, who was leaving work, struck the injured party, who was arriving for work, in the company parking lot); *Cadmus Magazines v. Williams*, 30 Va. App. 129, 135 (1999) (upholding Commission decision that injury "arose out of and in the course of [claimant's] employment" where claimant was injured in "employer's *private parking lot*" (emphasis added)).

In other cases, the employer had some level of control over employee parking. In *Barnes v. Stokes*, 233 Va. 249, 251 (1987), the Supreme Court of Virginia held that a parking lot injury was compensable because, "[a]lthough the parking lot was neither owned nor maintained by the employer, [the employer] was 'allocated a certain portion of the parking lot' sufficient for all its employees at that location to park and was 'specifically requested' to require its employees to park their vehicles in the designated area."

In *Cleveland v. Food Lion*, this Court distinguished the Supreme Court of Virginia's *Barnes* opinion, finding that an employee's injury "did not arise out of employment" where the employer had no control over the public parking lot. We explained:

> In *Barnes*, the employer controlled the use of the parking area.
> Food Lion did not. . . .

- 7 -

> Here, as in *Gilmer*, employees were allowed, but not required to park in the lot. The general public used the lot, and it was neither controlled nor maintained by employer.[5]

*Cleveland*, 43 Va. App. at 520.

There is no evidence to suggest that Quest owned, maintained, or controlled the parking lot. Thus, Poole's case is more akin to *Cleveland* and *Gilmer*, where this Court found that each claimant's injuries were not compensable. Also, unlike *Barnes*, Quest did not control where employees parked or allocate parking spaces to them. Additionally, though Poole claims that Quest told employees "where to park," pointing to Ali's testimony, Ali's statement must be viewed in its full context:

> So, we tell the employees and I'm speaking generally about parking. We tell them where to park. There's a parking garage called the Bellevue parking garage where you can come in through the tunnel and you're in the hospital and you don't cross the street at all. A lot of people park on the Riverwalk. That's an option. If there is a need for handicapped parking, which I'm handicapped, I'm a disabled veteran myself. I park in front of the hospital that's not under the cover, but it's on the right in front of the hospital. If you're a walker and you want to walk, there's parking beside the park. I also used to park on top of the hill and come in through the surgery entrance before the north.

Ali also stated that parking is available outside all the entrances and that there are "more handicapped spaces available for parking" because "[i]t is a hospital." In addition, Ali testified: "At the interview. I did go over parking is challenging. There's a lot of traffic, a lot of foot

---

[5] Although *Cleveland* states that "[t]he common area was not 'an essential means of ingress and egress from the public right-of-way,'" which is the test typically applied to walkway cases, the Court found *Gilmer* (a parking lot case) controlling and applied the parking lot analysis (i.e., reviewing a "combination of criteria, including but not limited to proximity, authority, and responsibility for maintenance"). *See* 2 Larson's Workers' Compensation Law § 13.04D ("When a parking lot is not owned nor controlled by the employer, the Commission's application of the doctrine 'rests on a combination of criteria, including but not limited to proximity, authority, and responsibility for maintenance.'"). Accordingly, *Cleveland* is a parking lot case. Labeling *Cleveland* as such is consistent with the facts in *Cleveland*. 43 Va. App. at 518 (stating "[claimant] fell as she was about to enter a traffic lane *in the parking lot*" and "[appellant] argues that the *parking lot* was part of the employer's premises" (emphases added)).

traffic. You can park in the garages. There's not a specific place to park." Thus, Ali's full testimony about parking clarified that Quest informs employees of multiple parking options, and her statement "[w]e tell them where to park" cannot be viewed in isolation. Further, although Poole stated at one point that she parked "where [she was] told to park," she also testified, "I can park anywhere there's a handicap spot, as long as it's open and I have a [disabled parking] placard."

The Commission's decision reflects that all testimony was taken into consideration. After considering that testimony, the Commission made a factual determination that Poole was not required to park in a specific garage or area. That factual determination is binding. *Va. Emp't Comm'n*, 43 Va. App. at 385 ("[T]his Court is bound by the commission's factual findings so long as they are supported by credible evidence, even if 'contrary evidence may be found in the record.'" (quoting *Manassas Ice*, 13 Va. App. at 229)). Accordingly, Poole's argument that the Commission erred in failing to find the parking garage was part of Quest's extended premises is unconvincing. *See Sentara Leigh Hosp. v. Nichols*, 13 Va. App. 630, 636 (1992) ("[T]he burden is on claimant to establish by a preponderance of the evidence . . . that one of these exceptions to the 'going to and from work' rule applies to her claim.").

Independently—and of greater importance—Poole did not fall in the parking garage. After parking, she entered a "walkway from the parking garage" and then "walked on the crosswalk" where she fell "halfway through." This Court has recognized a sharp distinction between parking lots and other areas. In *Sullivan*, this Court distinguished *Gilmer* as inapplicable because it was a parking lot case, not a walkway or sidewalk case. *Sullivan*, 79

- 9 -

Va. App. at 556.[6]  Poole did not fall in the parking garage.  Accordingly, the "parking lot" cases

do not conflict with the Commission's decision.[7]

B.  *Passageways or Walkways*

In worker compensation cases, the analysis for passageways and walkways differs from

the analysis for parking lots.  As this Court explained in *Prince*:

> [W]hen the workplace is located in an office building, an injury
> sustained by an employee in that building or on the grounds
> immediately surrounding the building is generally considered to
> have taken place on the employer's premises, even if the employer
> did not own or lease the particular place where the injury occurred,
> provided the employer "has some kind of right of passage, as in the
> case of common stairs, elevators, lobbies, vestibules, concourses,
> hallways, walkways, ramps, footbridges, driveways, or
> passageways through which the employer has something
> equivalent to an easement."

*Prince*, 6 Va. App. at 273-74 (quoting 1A Larson, Workmen's Compensation Law § 15.43

(1985)).  In *Prince*, we held that an employer was liable because "the walkway was a common

avenue of passage over the grounds and an *essential means of ingress and egress from the public*

*right-of-way to* Pan Am's place of business."  *Id.* at 274 (emphasis added).  Subsequent

walkway/passageway cases have continued to use that test.  *Price*, 19 Va. App. at 161 ("The

concrete apron leading to the driveway provided a common means of passage over the grounds

---

[6] *See also Washington v. Honeywell Int'l, Inc.*, No. 0467-17-2, slip op. at 5, 2017 Va. App. LEXIS 264, at *6 (Oct. 24, 2017) ("[C]laimant's injury did not occur in the parking lot, and applying the principles articulated in those cases would not support claimant's position."); *Cap. Area Pediatrics, Inc. v. Eken*, No. 1557-12-4, slip op. at 6, 2013 Va. App. LEXIS 141, at *9 (May 7, 2013) (finding parking lot cases inapplicable where claimant fell on a sidewalk). "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Fergeson v. Commonwealth*, 84 Va. App. 80, 94 n.5 (2025) (quoting *Jones v. Commonwealth*, 71 Va. App. 375, 382 n.2 (2019)).

[7] In addition to cases from this Court and the Supreme Court of Virginia, Poole argues that her case "cannot be meaningfully distinguished from the facts in *Ocheltree* [*v. Dairy Queen*, 64 O.I.C. 244, 245-47 (1985),] where compensation was awarded."  As a decision solely of the Workers' Compensation Commission, *Ocheltree* is not binding on this Court.  Moreover, *Ocheltree* is distinguishable because, unlike here, the injury took place in a parking lot.

to the house and an *essential means of ingress and egress from the public street to* the house where the work was to be performed." (emphasis added)); *Sullivan*, 79 Va. App. at 556 ("Like in *Prince*, although the walkway was not the only way to get to the destination, *the walkway was an essential means of ingress and egress from the airport terminal*." (emphasis added)).

Extended premises cases have found that compensability requires the claimant to demonstrate that they were "required" or "expected" to be at the site of the injury by virtue of their employment. *See Price*, 19 Va. App. at 161 ("Here, the claimant was *required* to traverse the concrete apron leading from the public street into the driveway in order to enter the house to paint." (emphasis added)); *Prince*, 6 Va. App. at 273 ("Her presence on the walkway to the building, therefore, was *required and expected* by virtue of her employment by Pan Am." (emphasis added)); *Sullivan*, 79 Va. App. at 556 ("Sullivan's presence on the walkway was *required and reasonably expected* by virtue of her employment within the terminal." (emphasis added)).

However, the initial question here is whether a crosswalk in a public street is the equivalent of a walkway or passageway. The Commission found it was not:

> Here, we do not find the area in which the claimant fell constitutes a passageway or walkway as argued by the claimant. Rather, the claimant testified that she was in the crosswalk of the street when she fell. There is no evidence that the employer owned, controlled, or maintained the crosswalk.

Poole cites no applicable authority to the contrary.

On the other hand, caselaw suggests that a crosswalk on a public street is not equivalent to a walkway or passageway. In *Ramey v. Bobbitt*, 250 Va. 474, 475-76 (1995), the Supreme Court of Virginia held that the coming and going rule applied to an employee who was killed "on a public street adjacent to his employer's premises while on his way to work." The Court distinguished *Painter v. Simmons*, 238 Va. 196, 197 (1989), a case where the claimant was

- 11 -

injured on a "private road which provide[d] access to the [employer's] facilities." The *Ramey* Court determined that the public road was not "in practical effect, a part of the employer's premises." *Ramey*, 250 Va. at 478.

Larson's Workers' Compensation Law treatise is also persuasive, as this Court and the Supreme Court of Virginia often quote it. *See, e.g.*, *Carrington v. Aquatic Co.*, 297 Va. 520, 528 (2019) (quoting § 46.063[8]); *Bassett Furniture Indus.*, *Inc. v. McReynolds*, 216 Va. 897, 902 (1976) (quoting § 49.12); *Berglund Chevrolet, Inc. v. Landrum*, 43 Va. App. 742, 750 (2004) (quoting § 10.01). 2 Larson's Workers' Compensation Law § 13.01 instructs that although travel on a public street between an *employer-owned* parking facility and the employer's "main premises" is generally compensable under the extended premises rule, "if the parking lot is a purely private one, the principle of passage between two parts of the premises is not available, and an employee crossing a public street to get to the parking lot is not protected."

Our cases have also often delineated between walkway or passageways and "public rights-of-way." *Price*, 19 Va. App. at 161 ("The concrete apron leading to the driveway provided a common means of passage over the grounds to the house and an essential means of ingress and egress *from the public street* to the house where the work was to be performed." (emphasis added)); *Prince*, 6 Va. App. at 274 ("[T]he walkway was a common avenue of passage over the grounds and an essential means of ingress and egress *from the public right-of-way to* Pan Am's place of business." (emphasis added)); *see also Dreyfus & Co. v. Meade*, 142 Va. 567, 574 (1925) ("Speaking generally, accidents on the street are not compensable as arising out of the employment.").

As there is no Virginia authority to the contrary,[8] this Court cannot say that the Commission's determination that the crosswalk was not part of the extended premises was plainly wrong or that the Commission erred in its application of the law.[9]

CONCLUSION

As explained, credible evidence supports the Commission's finding that Poole's injury did not arise out of her employment and that the extended premises doctrine does not apply. Accordingly, the Commission's decision is affirmed.

*Affirmed.*

---

[8] Poole also argues that her case "cannot be meaningfully distinguished from the facts in *Clemans* [*v. Wishard Mem'l Hosp.*, 727 N.E.2d 1084 (Ind. Ct. App. 2000)]," an Indiana case that awarded compensation. "Our version of the Act is based upon Indiana's Workers' Compensation Act, therefore, we have recognized that 'the construction placed upon the Indiana law by the courts of that state merits our consideration.'" *Giordano v. McBar Indus.*, 284 Va. 259, 265 n.5 (2012) (quoting *Barksdale v. H.O. Engen, Inc.*, 218 Va. 469, 499 (1977)). Like Poole, Clemans was a laboratory technician who fell in a public street between a parking lot and her employer's building. Unlike Poole, the employer in *Clemans* owned the parking lot. The Indiana Court of Appeals later distinguished *Clemans* in *Arnold v. Rose Acre Farms, Inc.*, for this very reason. *Arnold v. Rose Acre Farms, Inc.*, 966 N.E.2d 107, 111 (Ind. Ct. App. 2012) (citing 2 Larson's Workers' Compensation Law § 13.01(4)). The court explained that *Clemans*, "does not stand for the proposition that an employee may be eligible for benefits from injuries occurring when traveling a public road from his home to his employer's sole piece of property." *Id.*

[9] Poole also fails to show that she was "required" to traverse the crosswalk. As noted earlier, our caselaw demonstrates that Poole needed to show that the crosswalk (1) provided a common means of passage and an essential means of ingress and egress from the parking lot to the hospital and (2) that her presence on the crosswalk was required and expected because of her employment. *Price*, 19 Va. App. at 161 ("Here, the claimant was *required* to traverse the concrete apron leading from the public street into the driveway in order to enter the house to paint." (emphasis added)); *Prince*, 6 Va. App. at 273 ("Her presence on the walkway to the building, therefore, was *required and expected* by virtue of her employment by Pan Am." (emphasis added)); *Sullivan*, 79 Va. App. at 556 ("Sullivan's presence on the walkway was *required and reasonably expected* by virtue of her employment within the terminal." (emphasis added)). Here, the Commission determined that the crosswalk was not "required" by virtue of her employment. Poole cites Ali's testimony ("We tell them where to park"). As we explained above, the Commission reviewed the full testimony and made a factual determination that Quest did not require Poole to park in a particular area or spot.